STATE OF NORTH CAROLINA v. KENNETH CALVIN ANDERSON
No. 6818SC345

(Filed 20 November 1968)

**1. Constitutional Law § 11;    Criminal Law § 1—    power of Legislature to define crime**

    The Legislature, unless limited by Federal or State constitutional provisions, has the inherent power as a part of the police power of the State to define and punish any act as a crime, provided the statute has some substantial relation to the ends sought to be accomplished.

**2. Statutes § 4—    presumption of constitutionality**

    Any act passed by the Legislature is presumed to be constitutional, and all reasonable doubts will be resolved in favor of the lawful exercise of the legislative powers.

**3. Constitutional Law § 13;    Automobiles § 7—    right to travel on public highway — safety statutes**

    While the right of a citizen to travel upon the public highways is a

common right, it is within the State's police power to regulate and control the manner of exercise of that right in the interest of public safety and welfare.

**4. Constitutional Law § 13;    Automobiles § 140—— constitutionality of statute requiring motor cycle operators to wear helmets**

G.S. 20-140.2(b), which prohibits the operation of a motorcycle upon a public street or highway unless the operator and all passengers thereon wear safety helmets of a type approved by the Commissioner of Motor Vehicles, *is held* a valid exercise of the State police power in that it has a substantial effect in promoting both the safety and welfare of all who travel on the public streets and highways and does not contravene any provision of the State or Federal Constitutions.

APPEAL by defendant from *Gwyn, J.,* 8 July 1968 Criminal Session of GUILFORD Superior Court, Greensboro Division.

Defendant was indicted for operating a motorcycle upon a public street in the City of Greensboro on 21 January 1968 without wearing a safety helmet of a type approved by the Commissioner of Motor Vehicles in violation of G.S. 20-140.2(b). Upon call of the case for trial defendant moved to quash the bill of indictment on the grounds that the statute creating the criminal offense for which he was indicted is unconstitutional. This motion was overruled. The jury returned a verdict of guilty as charged and from sentence imposed thereon defendant appealed.

*Attorney General T. W. Bruton, Assistant Attorney General William W. Melvin and Staff Attorney T. Buie Costen for the State.*

*Douglas, Ravenel, Hardy & Crihfield, by D. S. Crihfield for defendant appellant.*

PARKER, J.

The sole question presented by this appeal is the constitutionality of that portion of G.S. 20-140.2(b), enacted as part of Sec. 1, Chap. 674 of the 1967 Session Laws, which reads as follows:

"No motorcycle shall be operated upon the streets and highways of this State unless the operator and all passengers thereon wear safety helmets of a type approved by the Commissioner of Motor Vehicles."

Defendant raises no question as to the beneficial effect and intended good purpose of this legislation. He contends, however, that it exceeds constitutional limits imposed by Art. 1, Sec. 17, of the North Carolina Constitution and by the Fourteenth Amendment to the

Federal Constitution on the State's police power in that the statute makes it a criminal offense for a person to fail to do an act the only result of which, so defendant argues, is to reduce possible injuries to himself, when this cannot be shown to be for the benefit of the public at large. We do not agree that the beneficial effects of the statute are so limited.

[1-3]   At the outset, it must be recognized that as stated by Parker, J. (now C.J.) in *State v. Hales*, 256 N.C. 27, 122 S.E. 2d 768:

> "The Legislature, unless it is limited by constitutional provisions imposed by the State and Federal Constitutions, has the inherent power to define and punish any act as a crime, because it is indisputedly a part of the police power of the State. The expediency of making any such enactment is a matter of which the Legislature is the proper judge. However, the act of the Legislature declaring what shall constitute a crime must have some substantial relation to the ends sought to be accomplished."

Furthermore there is a presumption that any Act passed by the Legislature is constitutional and all reasonable doubts will be resolved in favor of the lawful exercise of their powers by the representatives of the people. The right of a citizen to travel upon the public highways is a common right, but it is clearly within the State's police power to regulate and control the manner of exercise of that right in the interest of public safety and welfare. *Honeycutt v. Scheidt*, 254 N.C. 607, 119 S.E. 2d 777; *Fox v. Scheidt*, 241 N.C. 31, 84 S.E. 2d 259. In the case before us we are called upon to decide, therefore, only whether the statute here under attack bears a substantial relation to the promotion of the welfare and safety of the general public as distinguished from the welfare solely of the individual riders of motorcycles who are most directly affected. We hold that it does.

Death on the highway can no longer be considered as a personal and individual tragedy alone. The mounting carnage has long since reached proportions of a public disaster. Legislation reasonably designed to reduce the toll may for that reason alone be sufficiently imbued with the public interests to meet the constitutional test required for a valid exercise of the State's police power. However, it is not necessary to invoke so broad a premise in order to find the statute here attacked to be constitutional.

Approximately 30 states presently have statutes similar to the statute here attacked. The Supreme Court of Rhode Island, in holding constitutional the statute of that State, said:

"(I)t is our unqualified judgment that the purpose sought to be achieved by requiring cyclists to wear protective head-gear clearly qualified as a proper subject for legislation.

"The defendant's contention to the contrary presupposes that protection for the motorcycle operator was the sole motivation for the general assembly's action. Even if this were so, we are not persuaded that the legislature is powerless to prohibit individuals from pursuing a course of conduct which could conceivably result in their becoming public charges. Be that as it may, however, the requirement of protective headgear for the exposed operator bears a reasonable relationship to highway safety generally. It does not tax the intellect to comprehend that loose stones on the highway kicked up by passing vehicles, or fallen objects such as windblown tree branches, against which the operator of a closed vehicle has some protection, could so affect the operator of a motorcycle as to cause him momentarily to lose control and thus become a menace to other vehicles on the highway.

"It is fundamental that an act of the legislature commands judicial approval if on any reasonable view such act is designed and intended to protect the public health, safety and morals." *State v. Lombardi,* ...... R.I. ....., 241 A. 2d 625.

Although its highest Court has not yet passed on the question, lower New York courts have also held the statute of that State constitutional under the State's police power. *People v. Schmidt,* 54 Misc. 2d 702, 283 N.Y.S. 2d 290; *People v. Carmichael,* 56 Misc. 2d 388, 288 N.Y.S. 2d 931, (reversing 53 Misc. 2d 584, 279 N.Y.S. 2d 272).

In *People v. Carmichael, supra,* the court pointed out that the New York statute requiring any person operating or riding on a motorcycle to wear an approved protective helmet had been enacted at the request of the New York Department of Motor Vehicles following an extensive study by a special committee appointed by the Commissioner, and the court quoted from the Departmental Memorandum to the Legislature citing the results of this study as follows:

"The number of accidents involving motorcycles is increasing rapidly. In fact, motorcycle accidents increased by 105% in 1965 as compared to 1964, while the total registration of these vehicles increased by 83%. Fatalities increased by 63.6% and personal injury accidents by 100%. A summary of the Department statistics indicates that 89.2% of the motorcycle accidents result in injury or death and that almost all fatalities occurring

as a result of such accidents involve head injuries. Most of these fatalities could have been avoided, or the severity lessened, by the use of a proper helmet."

In ruling the New York statute constitutional, the court said:

"(O)n the factual situation . . . giving rise to the instant enactment, it is apparent that the challenged legislation requiring the wearing of a protective helmet for self-protection is a valid purpose of legislative action under the police power of the state. Indeed, the inherent danger of operating a motorcycle, not only to the driver but to other users of the highway, has likewise been considered in upholding the validity of this statute as a valid objective of the state's police power (*People v. Schmidt*, 54 Misc. 2d 702, 283 N.Y.S. 2d 290).

"Given the existence of a proper purpose, it still remains that the means undertaken to accomplish it are reasonable and not oppressive or discriminatory. A determination of this issue depends upon existing circumstances, contemporaneous conditions, the object sought to be obtained and the necessity or lack thereof for the required legislation (*Vernon Park Realty Inc. v. City of Mt. Vernon*, 122 N.Y.S. 2d 78, aff'd 282 App. Div. 890, 125 N.Y.S. 2d 112, aff'd 307 N.Y. 493, 121 N.E. 2d 517).

"Considering the nature of a motorcycle (the intrinsic vulnerability of the operator and speed attainable), together with the circumstances set forth in the departmental memorandum, it is apparent that motorcycles are readily distinguishable from other vehicles, and that the means employed in this legislation are reasonably appropriate to accomplish the desired purpose and are not unduly oppressive."

[4]    In addition to the fact that wearing protective headgear reduces the vulnerability of motorcycle riders to injuries from flying stones and other objects, thereby increasing their ability to keep their vehicles under control and consequently lessening danger to other users of the highway, the statute here attacked affects the general motoring public in another way. In North Carolina, by reason of our Motor Vehicle Safety and Financial Responsibility Act, G.S., Chap. 20, Art. 9A, most operators of motor vehicles in our State are required to carry motor vehicle liability insurance at a heavy annual premium cost. Any statute which can reasonably be expected to reduce that premium cost necessarily affects the welfare of the public at large. Reducing the number of deaths and the severity of injuries to riders of motorcycles on the streets and highways of our State and the consequent reduction in liability insurance

premium costs does, therefore, affect not alone that limited class of persons who ride motorcycles, but also directly and beneficially affects all operators of motor vehicles in our State.

We are advertent to the fact that other courts, in passing upon the similar statutes of their states, have found them to be unconstitutional. In *Everhardt v. New Orleans*, 208 So. 2d 423, and in *American Motorcycle Association v. Davids*, 158 N.W. 2d 72, the courts of appeal of Louisiana and Michigan found insufficient relationship between the admittedly desirable purposes which may be promoted by the statute and the achievement of any benefit to the public at large.

[4] For the reasons stated above we do not agree that the beneficial effect of the statute is so limited that it affects only those individuals upon whom it directly operates, but hold that it does have a substantial effect in promoting both the safety and the welfare of all who travel our streets and highways. Accordingly, we hold that G.S. 20-140.2(b) does not contravene any provision of either our State or Federal Constitutions, and the judgment of the trial court is

Affirmed.

BROCK and BRITT, JJ., concur.