THE STATE OF OHIO *v.* BETTS.

[Cite as State v. Betts, 21 Ohio Misc. 175.]

(No. 29294—Decided August 22, 1969.)

Municipal Court of Franklin.

*Mr. P. Daniel Fedders,* for plaintiff.
*Messrs. Elliott & Boyd,* for defendant.

RILEY, J. Defendant is charged with violating Section 4511.53, Revised Code, in that he failed to wear a protective head gear while driving his motorcycle. Defendant

has demurred to the affidavit charging him with such violation on the grounds that, as a matter of law, said statute denies him rights guaranteed under Amendment XIV, United States Constitution, and Section 1, Article I, Ohio Constitution.

Section 4511.53, Revised Code, provides as follows:

"A person operating a bicycle or motorcycle shall not ride other than upon the permanent and regular seat attached thereto, nor carry any other person upon such bicycle or motorcycle other than upon a firmly attached and regular seat thereon, nor shall any person ride upon a bicycle or motorcycle other than upon such a firmly attached and regular seat.

"No bicycle or motorcycle shall be used to carry more persons at one time than the number for which it is designed and equipped, nor shall any motorcycle be operated on a highway when the handle bars or grips are more than fifteen inches higher than the seat or saddle for the operator.

"No person shall operate a motorcycle on a highway, or be a pasesnger on a motorcycle, unless wearing a protective helmet on his head, with the chin strap properly fastened, and using safety glasses or other protective eye device. Such helmet, safety glasses, or other protective eye device shall conform with regulations prescribed and promulgated by the director of highway safety. The provisions of this paragraph or a violation thereof shall not be used in the trial of any civil action."

Section 1 of Amendment XIV, United States Constitution, reads as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Section 1, Article I, Ohio Constitution, provides:

"All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."

"Liberty," as used in Section 1, Article I, Ohio Constitution, means "the right of man to be free in the enjoyment of the faculties with which he has been endowed by his Creator, subject only to such restraints as are *necessary for the common welfare." Palmer & Crawford* v. *Tingle,* 55 Ohio St. 423. The word "liberty," as used in the Constitution of the United States and the several states, means the right to such act as one may judge best for his interest, not inconsistent with the rights of others. *Ex Parte Drexol,* 147 Cal. 763, 82 P. 429. The United States Supreme Court has said, "Liberty implies the absence of arbitrary restraint * * *." *Chicago, B. & Q. Rd. Co.* v. *McGuire,* 219 U. S. 567.

The ultimate test of the propriety of police regulations must be found in the Fourteenth Amendment, since it operates to limit the field of police power to the extent of preventing the enforcement of statutes in denial of the rights that amendment protects.

"The police power is an attribute of sovereignty and has its origin, purpose and scope in the general welfare, or as it is often expressed, the public safety, public health and public morals. These terms indicate its field, yet its boundaries are necessarily vague and indefinable. The broad discretion thus vested in the state is fraught with dangers to the personal and property rights of private persons; and therefore the courts have always asserted the right to restrain the exercise of the power to the extent that *private rights may not be arbitrarily or unreasonably infringed.* Such cases are within the rights reserved by the Bill of Rights and are therefore the unconstitutional, or rather extra-constitutional, exercise of police power and void." *Mirick* v. *Gims,* 79 Ohio St. 174. (Emphasis added.)

"* * * the power is subject to express state constitu-

tional limitations and to the inhibition of the Fourteenth Amendment to the Constitution of the United States against any state to deprive any person of life, liberty or property without due process of law and to deny to any person within its jurisdiction the equal protection of the laws, and to the implied limitation that every exercise of the power must be reasonable. * * *" *State v. Marble,* 72 Ohio St. 21.

It is elementary that the Legislature is the primary judge of the propriety of police measures and that the courts will not presume to substitute their judgment or wisdom for that of the legislative body. This, of course, is as it should be; the courts should not replace the legislative discretion regarding necessity or expediency of a police regulation with their own opinions as to the desirability of such measures. However, *the question of whether or not a given statute or ordinance is within the police power is a matter of law to be determined by the court.* That is to say, no regulation which inhibits or restricts human conduct is valid unless it bears a *real* and *substantial* relation to the public health, safety, morals or general welfare. The determination of whether or not such relationship exists is a judicial function, as is the determination of whether or not a given police measure meets the requirement of reasonableness.

In *Cincinnati* v. *Correll,* 141 Ohio St. 535, the Ohio Supreme Court, in reviewing a police ordinance, held, with regard to the Ohio Constitution:

"Section 1, Article I, provides as follows:

"All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety.

"The rights guaranteed by Article I of the Constitution are not unrestricted rights but are subject to limitation or abrogation to such extent as may be necessary to promote the health, safety, morals or general welfare of society as a whole.

"Regulations which limit or abrogate these guaranties are sustained by virtue of a power inherent in government, commonly called the police power. The term police power, although generally understood and universally recognized, is somewhat hazy and ambiguous and not subject to precise or even accurate definition.

"* * *

"*Laws or ordinances passed by virtue of the police power which limit or abrogate constitutionally guaranteed rights must not be arbitrary, discriminatory, capricious or unreasonable and must bear a real and substantial relation to the object sought to be obtained, namely, the health, safety, morals or general welfare of the public.*

"*The courts of this country have been extremely zealous in preventing the constitutional rights of citizens being frittered away by regulations passed by virtue of the police power.*

"If an enactment is referable to the police power, to be valid, the court must be able to say that it tends in some *substantial* degree to the prevention of offenses, or the preservation of the health, morals, safety or general welfare of the public. Therefore, if it is apparent that there is no *plausible, reasonable* and *substantial* connection between the provisions of the act and the supposed evils to be suppressed, there exists no authority for its enactment. Legislative bodies may not, under the guise of protecting the public interest, interfere with private business by imposing arbitrary, discriminatory, capricious or unreasonable restrictions upon lawful business.

"We realize that the police power is elastic to meet changing conditions and changing needs, yet it cannot be used to abrogate or limit personal liberty or property rights contrary to constitutional sanction." (Emphasis added.)

In *Froelich* v. *Cleveland*, 99 Ohio St. 376, it was held:

"The state and municipalities may make all *reasonable, necessary* and *appropriate* provisions to promote the health, morals, peace and welfare of the community. But

neither the state nor a municipality may make any regulations which are unreasonable. *The means adopted must be suited to the end in view, must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation.*"

In every exercise of the police power, reasonableness is a prerequisite to validity.

A presumption of validity may be indulged by the courts toward police legislation and the courts may not substitute their opinion for the opinion of the Legislature as to the propriety thereof, yet the courts always have, and properly so, examined such legislation closely to ascertain if, under all of the circumstances, it *substantially* promotes the public health, safety, morals or general welfare, or if, on the other hand, it does not bear such relation and is merely capricious, arbitrary or discriminatory.

In *Appeal of White*, 287 Pa. 259, 134 A. 409, it was stated in syllabus 4:

"While tribunal to determine proper exercise of police power is in first instance the Legislature, ultimate decision rests with courts, and if there is doubt as to whether statute is enacted for recognized police object, or if, conceding its purpose, its exercise goes too far, it then becomes judicial duty to investigate and declare given exercise of police power invalid."

A public *need* must exist for the enactment of a police measure. Without some *reasonable public necessity* for the restriction or regulation of an individual, the restriction or regulation is unwarranted and invalid and is not a proper exercise of the police power. *In order to justify a police regulation, it must appear not only that the public will be substantially benefited by the imposition of a given restriction, but that the public will suffer substantially if the restriction is not imposed.* The ancient legal maxim "De minimus non curat lex" may well be applied when considering the necessity for a given police measure.

In *Youngstown* v. *Kahn Bldg. Co.*, 112 Ohio St. 654, Judge Allen stated: "The police power, however, is based

upon *public necessity*. There must be an *essential public need* for the exercise of the power in order to justify its use."

In the same case Judge Allen made the position of the Supreme Court of Ohio clear as to when an exercise of the police power is warranted: "We are therefore remitted to the proposition that the police power is based upon police necessity, and that *the public health, morals, or safety * * * must be in danger in order to justify its use."

The Supreme Court of the United States, in *Lawton* v. *Steele*, 152 U. S. 133, 14 S. Ct. 499, held: "It must appear, first, that the interests of the public generally * * * *require* such interference, and that the means * * * are not unduly oppressive upon individuals."

Whether or not there exists an actual, real and substantial need for the enactment of restrictive legislation is not a matter for the sole and unbridled determination of the Legislature. The Legislature cannot, by its arbitrary fiat, create a public need when none in fact exists. The determination of a "necessity" must be carefully scrutinized. It is a matter of history that "necessity" has been the justification for despotism. "Necessity is the plea for every infringement of human freedom. It is the argument of tyrants; it is the creed of slaves." William Pitt, Speech, House of Commons, November 18, 1783.

Where there is a significant encroachment upon personal liberty, the state may prevail only upon showing a subordinating interest which is compelling. 16 American Jurisprudence 2d 685.

Does the requirement of Section 4511.53, Revised Code, that motorcycle riders wear protective helmets and safety glasses or other protective eye devices bear a real and substantial relation to the public health, safety, morals or general welfare? Is there a public need for such regulation? Similar statutes have been judicially reviewed on a number of occasions. The courts are divided on the question of constitutionality of helmet statutes. A number of courts have held that a state may constitutionally, under its police power, regulate and prescribe the manner in which motorcyclists on the public highways shall protect them-

selves so as not to endanger other users of the public roads and that the police power may be envoked to protect individuals from the consequences of their own carelessness. *People* v. *Carmichael,* 56 Misc. 2d 388, 288 N. Y. Supp. 2d 931; *People* v. *Bielmeyer,* 54 Misc. 2d 466, 282 N. Y. Supp. 2d 797; *People* v. *Newhouse,* 55 Misc. 2d 1064, 287 N. Y. Supp. 2d 713; *People* v. *Schmidt,* 54 Misc. 2d 702, 283 N. Y. Supp. 2d 290; *Commonwealth* v. *Howie,* Mass. 238 N. E. 2d 373; *State* v. *Mele,* 103 N. J. Super. 353, 247 A. 2d 176, and *State, ex rel Colvin,* v. *Lombardi,* —R. I.—, 241 A. 2d 626.

The only Ohio case on this subject which has come to our attention is *State* v. *Craig,* 19 Ohio App. 2d 29, decided June 25, 1969, by the Court of Appeals for Seneca County. In that case the court said:

"We believe that with the great increase of motorcycles on the highways, a motorcyclist who loses control of his vehicle because he is struck on his bare head by an object, constitutes a hazard to other users of the highway who may be struck by a motorcycle which has gone out of control.

"We are, therefore, of the opinion that the statute here involved bears a real and substantial relation to the public health and general welfare and is thus a valid exercise of the police power and constitutional."

On the other hand, the Michigan Court of Appeals held a similar statute unconstitutional in *American Motorcycle Association* v. *Davids,* 11 Mich. App. 351, 158 N. W. 2d 72. The court found that the Michigan helmet statute was beyond the state's police authority as it was *intended only for the protection of the individual motorcyclist and not for the safety of the public generally.* The court said:

"This statute has a relationship to the protection of the individual motorcyclist from himself, but not to the public health, safety and welfare.

"* * *

"The precedental consequences of 'stretching our imagination' to find a relationship to the public health, safety and welfare, require the invalidation of this statute."

The Louisiana Court of Appeals held a similar ordi-

nance unconstitutional in *Everhardt* v. *New Orleans, La.,* 208 So. 2d 423:

"In our view the helmet ordinance constitutes a denial of due process of law to plaintiffs in that *it deprives them of an individual liberty without promoting a purpose beneficial to the public at large.*

"Further, we conclude the ordinance also denies plaintiffs the equal protection of laws in that *it imposes undue restrictions on one class of the motoring public without any salutary effect to the public at large.*" (Emphasis added.)

The decision of the Seneca County Court of Appeals in the *Craig case, supra,* while entitled to great respect as an authority, is not binding on this court. The "real and substantial relation to the public health and welfare," as described in the *Craig opinion* strikes us as being remote, tenuous and speculative. There does not appear to be any real and substantial public danger which will be alleviated by the statutory requirement of helmet and goggles.

We see little danger to the traveling public from motorcyclists being "struck on the bare head by an object." The *public* risk from such a source is, at best, remote. Any legislative inhibition of individual liberty must be supported by facts demonstrating a compelling public need. Mere speculation, supposition or incidental public benefits are insufficient. We are not aware of any substantial history of highway injuries or collisions resulting from bareheaded motorcycling. The *Craig decision* cites no such experience. As pointed out in *American Motorcycle Assn.* v. *Davids, supra,* the court is not required, and should not, "stretch its imagination to find a relationship to the public welfare, health and safety." Such relationship must be readily apparent to support a police regulation.

If, in fact, the General Assembly apprehended danger from objects striking bare heads, would it not have specified similar protective devices for all categories of bareheaded users of the public roads? An open automobile, out of control as a result of the driver being struck on his bare head by an "object," is a far more lethal instrument than a motorcycle, yet there has been no attempt to require the drivers of convertibles to don helmet and goggles.

Would not the same reasoning apply to the operators of all open vehicles, such as bicycles, tractors and other farm machinery, and highway maintenance equipment? The statute in question refers to both bicycles and motorcycles in the first two paragraphs, but pointedly limits the helmet and goggles requirement to motorcyclists.

We must conclude that Section 4511.53, Revised Code, is designed only for the protection of the individual motorcyclist. Whether or not a motorcyclist wears a helmet and goggles is a matter of concern solely to the individual involved. Included in man's "liberty" is the freedom to be as foolish, foolhardy or reckless as he may wish, so long as others are not endangered thereby. The state of Ohio has no legitimate concern with whether or not an individual cracks his skull while motorcycling. That is his personal risk.

"There is too much nonsensical regulation of purely personal affairs in today's government. Liberty is almost unknown. You are permitted to take it in homeopathic doses when administered by some commission or court, but what that measure of liberty may be you cannot tell until this court decides. It is high time that we were going back *to* the constitution instead of going back *on* the constitution." Wanamaker, J., dissenting in *Celina Mutual Telephone Co.* v. *Mutual Telephone Co.*, 102 Ohio St. at page 523.

We find that Section 4511.53, Revised Code, insofar as it attempts to require motorcyclists on a highway to wear a protective helmet and safety glasses or other protective eye device, bears no real and substantial relation to the public health, safety, morals or general welfare and is, therefore, beyond the police power of the state. Said statute denies defendant liberty guaranteed to him under the Fourteenth Amendment to the United States Constitution and Section 1, Article I, Ohio Constitution.

*Demurrer sustained.*