[No. 40167. En Banc. October 16, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. ERNEST LAITINEN, *Appellant*.*

*Ernest W. Laitinen*, pro se.

*Charles O. Carroll* and *David W. Hotchkin*, for respondent.

*Chas. H. W. Talbot* (of *Talbot, Smith & Stone*), *Jack Zektzer, Arnold J. Barer*, and *Michael H. Rosen*, amici curiae.

HALE, J.—A statute enacted in 1967 requires all persons riding motorcycles on the public highways to wear protective helmets of a type approved by the state's commission on equipment. It states:

It shall be unlawful:

. . .

For any person to operate or ride upon a motorcycle unless he wears a protective helmet of a type approved

*Reported in 459 P.2d 789.

by the commission on equipment. Such a helmet must be equipped with either a neck or chin strap which shall be fastened securely while the motorcycle is in motion. The commission is hereby authorized and empowered to adopt and amend regulations covering the types of helmet and the special specifications therefor and to establish, maintain, and distribute to law enforcement agencies throughout the state a list of approved helmets which meet the specifications to be established by the commission on equipment.

Laws of 1967, ch. 232, § 4(3), p. 1117; RCW 46.37.530(3).

The commission on equipment, established in 1961 by RCW 46.37.005, consisting of the Chief of the Washington State Patrol, the Director of Highways and the Director of the Department of Motor Vehicles, by resolution approved several types and kinds of protective helmets and prescribed minimum standards. September 17, 1967, while both the statute and the resolution were in effect, Ernest Laitinen rode a motorcycle on a public highway in King County wearing neither a protective helmet approved by the commission on equipment nor any protective helmet whatever.

Arrested, charged and convicted of violating RCW 46.37.530(3) in justice court and convicted on appeal by the superior court sitting without a jury, defendant now appeals the judgment and sentence of a suspended fine of $10. He prosecutes the appeal pro se, but the Washington Motorcycle Defense League and the American Civil Liberties Union, appearing amici curiae, filed briefs, joined in arguing the appeal, and support his position. Legality of the commission's resolution is unchallenged; the only issue is whether the statute requiring anyone who rides a motorcycle upon the public highways to wear an administratively prescribed protective helmet is a constitutional exercise of the state's police power.

Neither defendant nor amici curiae contend that the state may not constitutionally enact laws requiring one to have and use safety appliances or devices which protect others on the public highways or which tend to reduce the haz-

ards of highway travel. They do urge, however, that the protective helmet reduces the hazards to the motorcycle rider only and has no beneficial effect upon other persons on the highway, and that requiring one to protect himself when the protection will not serve to protect others is an unwarranted and unconstitutional intrusion upon personal freedom and violates defendant's rights under Const. art. 1 §§ 3, 7, and U. S. Const. amends. 9 and 14. Although conceding that the state has a broad police power, defendant and amici curiae contend that, since the helmet affords protection to the wearer only, it does not protect the public, and, therefore, requiring that it be worn has no real, substantial or rational connection with the public peace, health, safety, morals or general welfare. Stated another way, defendant contends that the statute accomplishes no more for the public good than to provide a means of harassing cycle riders and requiring them to spend money for something they would not otherwise buy and, therefore, is not a reasonable exercise of the police power.

 Highlighting the issue here is the marked difference between the decision making processes of the judiciary and those of the legislative branch of the government under our constitutions. Whereas the judges must determine the facts from the evidence, avoiding personal predilections and opinions, come to a conclusion of ultimate fact from the proof presented, and apply the law thereto regardless of personal animus, bias or feelings, the legislative branch of government under our constitution is free of such strictures. Legislators may well have been selected by the people not in spite of but because of openly declared opinions, prejudices and predilections. Unlike the judges, legislators need not base their decisions upon the weight of evidence, but may vote against the preponderance of it or vote upon a proposition without hearing any evidence whatever. In prescribing the police power, all that is constitutionally required of the legislature is that a state of facts can reasonably be conceived to exist which would justify the legislation. If the courts can reasonably conceive of such a state of facts, they must presume that such facts

actually did exist and that the statute being tested was passed with reference to them. *Shea v. Olson,* 185 Wash. 143, 53 P.2d 615, 111 A.L.R. 998 (1936); *State v. Dexter,* 32 Wn.2d 551, 202 P.2d 906, 13 A.L.R.2d 1081 (1949); *Clark v. Dwyer,* 56 Wn.2d 425, 353 P.2d 941 (1960), *cert. denied,* 364 U.S. 932, 5 L. Ed. 2d 365, 81 S. Ct. 379 (1961); *Treffry v. Taylor,* 67 Wn.2d 487, 408 P.2d 269 (1965), *appeal dismissed,* 385 U.S. 10, 17 L. Ed. 2d 10, 87 S. Ct. 70 (1966).

Accordingly, if a state of facts can reasonably be conceived that will sustain a classification under the police power, there is a presumption that such facts exist. *Ace Fireworks Co. v. Tacoma,* 76 Wn.2d 207, 455 P.2d 935 (1969); *State v. Persinger,* 62 Wn.2d 362, 382 P.2d 497 (1963); *Shea v. Olson, supra.* It is not the court's function to decide whether the statute is sound or unsound, wise or unwise, effectual or ineffectual—but only whether it is within the legislature's constitutional powers to enact it. This comports with the general democratic principle that powers of self-government have been largely reserved by the people to be exercised through their legislatures and not their courts.

Applying these general principles to the motorcycle helmet statutes, we think that a state of facts can reasonably be conceived to exist that motorcycles capable of operating at very high speeds are far more hazardous to their riders than automobiles and other kinds of vehicles. Motorcycles not only appear to have less stability than other kinds of vehicles, but they seem more hazardous too because their riders have no protective frame or structure surrounding them. Even at slow and moderate speeds, motorcycle riders are subject to greater danger of injuries from skids, slips, slides and spills than are riders in other kinds of motor vehicles, and at high speeds these dangers increase enormously. The legislature could reasonably assume that the increased hazards in riding motorcycles, when combined with the dangers arising from the want of a protective frame or shield, add to the probabilities of injury to the upper neck and head. One way of reducing these hazards and their attendant injuries, it can reasonably be conceived,

is to require all motorcycle riders to wear sturdy protective helmets.

■ The legislature could also reasonably assume—and legislate on such assumption—that the public welfare and safety is substantially affected by the dangers arising from motorcycle riding. The public has already assumed many burdens and responsibilities in helping ameliorate the effects of accidents. It has at public expense substantially provided emergency ambulance, medical and hospital care for persons injured on the public highways and supplied medical, surgical and hospital services for indigent persons so injured. The public has undertaken the basic responsibility of policing the public highways and regulating traffic thereon both in the interests of safety and efficiency, and has utilized the state and its political subdivisions to carry these burdens. The greater the number of serious injuries to the head and upper spine suffered by motorcycle riders, the greater the burdens it can reasonably be said are imposed on the publicly supplied or regulated medical, hospital, ambulance and police services. There thus exists a reasonably manifest connection between the use of protective helmets by motorcycle riders and the public health, welfare and safety. Accordingly, requiring motorcycle riders to wear protective helmets of a type approved by the state commission on equipment when riding upon the public highways is a legitimate and reasonable exercise of the police power, and RCW 46.37.530(3) is a constitutional declaration thereof.

Our views upholding the constitutionality of the protective helmet statutes pertaining to riders of motorcycles appear to have nearly universal support in other jurisdictions. *Ex parte Smith,* 441 S.W.2d 544 (Tex. Crim. 1969); *State ex rel. Colvin v. Lombardi,* _____ R.I. _____, 241 A. 2d 625 (1968); *Commonwealth v. Howie,* 354 Mass. 769, 238 N.E.2d 373 (1968), *cert. denied,* 393 U.S. 999, 21 L. Ed. 2d 464, 89 S. Ct. 485 (1968); *People v. Bielmeyer,* 54 Misc. 2d 466, 282 N.Y.S.2d 797 (1967); *People v. Schmidt,* 54 Misc. 2d 702, 283 N.Y.S.2d 290 (1967), *appeal dismissed,* 23 N.Y.2d 686, 295 N.Y.S.2d 936, 243 N.E.2d 153 (1968); *People v.*

*Newhouse,* 55 Misc. 2d 1064, 287 N.Y.S.2d 713 (1968); *People v. Carmichael,* 56 Misc. 2d 388, 288 N.Y.S.2d 931 (1968); *State v. Mele,* 103 N.J. Super. 353, 247 A.2d 176 (1968); *Everhardt v. New Orleans,* 253 La. 285, 217 So. 2d 400 (1968); *State v. Anderson,* 3 N.C. App. 124, 164 S.E.2d 48 (1968). *See, also, Constitutional Law—Validity of Safety Helmet Requirements,* 71 W.Va. L. Rev. 191 (1969); *Constitutional Law—Police Power—Motorcycle Crash Helmet Laws' Relation to Public Welfare,* 1969 Wis. L. Rev. 320 (1969); *Constitutionality of Mandatory Motorcycle Helmet Legislation,* 73 Dick. L. Rev. 100 (1968). *Cf., American Motorcycle Ass'n v. Davids,* 11 Mich. App. 351, 158 N.W.2d 72 (1968).

The judgment and sentence, are, therefore, affirmed.

HUNTER, C. J., FINLEY, HAMILTON, NEILL, and McGOVERN, JJ., and DONWORTH, J. Pro Tem., concur.

HILL, J. (dissenting).—I dissent. The majority have been most ingenuous and ingenious in their efforts to find some nexus between the legislation here in question and the public health, safety and welfare. The reasoning adopted by the majority would with equal force support legislation requiring a pedestrian to don such a helmet and other protective apparatus when crossing a street or road; or even prohibit a pedestrian from crossing a street or road save at controlled intersections.

ROSELLINI, J., concurs with HILL, J.