485 P.2d 1038

**STATE of Utah, Plaintiff and Respondent,**

v.

**Gary D. ACKER, Defendant and Appellant.**
**No. 12268.**

Supreme Court of Utah.
June 3, 1971.

---

. Van Sciver, Florence, Hutchison & Sharp, Brian R. Florence, Odgen, for defendant-appellant.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, Chief Asst. Atty. Gen., Salt Lake City, for plaintiff-respondent.

ELLETT, Justice:

The defendant appeals from a conviction of violating Section 41–6–107.8, U.C.A.1953 (Replacement Volume 5A). This statute requires any person operating or riding upon a motorcycle on a public highway where the posted speed limit is above 35 miles per hour to wear a crash helmet, etc.

The defendant contends that the statute is an invalid exercise of the police power in that it is an unreasonable infringement of his personal liberty and of his right to use his property as he sees fit. He further contends that the statute violates the equal protection clause of our constitution and is arbitrary and capricious in that one riding a motorcycle upon a street posted for speeds not exceeding 35 miles per hour does not need to wear the helmet. He further contends that the standards set forth for the type of headgear to be worn is not definitely set out.

■ We think the type of headgear prescribed is sufficiently specified and, besides that, he wore no headgear at all.

■ If the act is otherwise good, it is not bad because it applies only to those highways where speeds exceed 35 miles per hour. That harm from collisions and other mishaps increases directly as the square of speed is too well known to require any further discussion of this point. The legislature could well determine that 35 miles per hour should be the speed at which helmets would need to be worn in order to preserve life and limb.

■ The principal question to be answered is whether the legislature can require a motorcycle rider or operator to wear protective headgear at all. The defendant argues that since the statute requires riders as well as operators to wear the device, it must be assumed that the law was enacted solely for the purpose of protecting the individual wearer.

This does not necessarily follow. While it was undoubtedly the intention of the legislature to enact a measure which would protect the life and limb of its citizens, it also is evident that any measure taken which would protect the operator of a motorcycle would tend to avoid collisions with other traffic upon the highway. Even if it were to be assumed that the legislature intended to protect only those who were riding upon the motorcycle from harm, the public certainly has an interest in that regard. Whenever a citizen becomes maimed or is killed, the entire public is affected to some degree. As John Donne suggested, each citizen is a clod of the entire whole, and when one citizen is diminished, we all suffer. Both hospitals and relief rolls are crowded, and it is a proper exercise of police power for the legislature to enact statutes which would tend to keep citizens out of the one and off of the other. Whether the wearing of the helmet is

likely to reduce accidents and thus avoid death and maiming is a matter for the legislative body to determine and not for the courts.

■ It is settled law that a statute is presumed to be constitutional unless it clearly violates some specific provision of the constitution.[1] We are unable to say that the statute clearly violates any provision of our constitution, and from what we have said above, it is obvious that we think the statute is valid.

While the courts of Michigan, Illinois, and Ohio have held motorcycle helmet statutes to be unconstitutional, the overwhelming weight of authority[2] is to the contrary,

and Utah should and does align itself with the majority holding.[3]

The judgment and sentence of the trial court are affirmed.

TUCKETT, J., concurs.

HENRIOD, Justice (concurring):

I concur. I also concur in what is said generally in the dissent about the erosion of our liberties, but I believe this case, though a topic for lively debate, may be classified as a legitimate subject for regulation within the police power, just as a law would be to prevent the almost synonymous circumstance of suicide. I believe no one successfully would be convincing if he said one's freedom is so sacred as to demand an uninterrupted right to use heroin,

1. State v. Nielsen, 19 Utah 2d 66, 426 P. 2d 13 (1967).

2. State v. Anderson, 3 N.C.App. 124, 164 S.E.2d 48 (1968); Bisenius v. Karns, 42 Wis. 42, 165 N.W.2d 377 (1969); State ex rel. Colvin v. Lombardi, 104 R.I. 28, 241 A.2d 625 (1968); Everhardt v. New Orleans, 253 La. 285, 217 So.2d 400 (1969); People v. Albertson, 93 Idaho 640, 470 P.2d 300 (1970); Commonwealth v. Howie, 354 Mass. 769, 238 N.E. 2d 373 (1968); State v. Laitinen, 459 P.2d 789 (Wash.1969); State v. Eitel, 227 So.2d 489 (Fla.1969); Love v. Bell, 465 P.2d 118 (Colo.1970).

3. The dissent would give an undeserved break to the defendant. When an appeal is taken from a justice court to the district court, the ruling of the district court is final on all matters except that the defendant may raise the constitutionality of the statute on appeal to this court. In this particular case the defendant was charged and convicted in the City Court

of Ogden, Utah. He thereafter appealed to the district court, where he was again found guilty. The only matter which he can present before this court is the constitutionality of the statute, and that was the main thrust of his defense in the courts below.

The reason why the record is silent as to any proof of what the standard was for wearing the helmet is because the parties stipulated as to the facts of the case. The following colloquy between defendant's counsel and the court shows that counsel did not require any proof nor offer any himself:

THE COURT: There is a standard. I have seen it. It has been quite some time ago. I looked it up one time because I was concerned myself. In fact, I purchased a helmet one time, and I looked it up to find out. And there is a standard.

MR. FLORENCE: I will defer to Your Honor on that point.

or to indulge in scuba diving with dangerous, defective equipment. I believe that the police power is flexible enough reasonably to have included within it certain factual situations that are so hazardous personally to a large segment of the community as reasonably to be the subject of regulation, and that adequate protective headgear for the rapidly expanding number of cyclists in the country reasonably may be numbered among them.

CROCKETT, Justice (dissenting):

I am unable to agree with the decision affirming the defendant's conviction. It does not address itself to, nor in any way dispose of, Point I as stated in the defendant's brief: that the evidence failed to prove he had committed any crime.

The statute upon which the accusation is based, Section 41–6–107.8(a), Utah Code Annotated 1953, under which the appellant is charged, reads:

No person shall operate or ride upon a motorcycle or motor-driven cycle upon a public highway posted for speeds higher than 35 miles per hour, unless he is wearing protective headgear *which complies with standards established by the commissioner of public safety*.

Focusing attention upon the emphasized portion of the statute, he states:

\* \* \* there is no evidence whatsoever as proof of the last required element of the offense, i. e., noncompliance with standards established by the Commissioner of Public Safety.

He further argues that he

\* \* \* is unaware of and unable to find any standards in this area that have been established by the Commissioner of Public Safety.

On this first point of his brief defendant is uncontestably correct. There is nothing in the record as to any proof concerning any "standard established by the Commissioner of Public Safety" nor that any such standard was adopted, or in any manner promulgated and made available to the public. And the State does not even contend that there was in this record any such proof offered or referred to, or in any wise made part of the record. In the absence of proof to establish an essential element of the offense, the conviction cannot properly be sustained.

Proceeding beyond the question of the defendant's conviction: Inasmuch as the statute here in question is a new enactment, on a public issue, and consequently its validity must eventually be passed upon by this court, it does no violence to my sense of procedural propriety that the court go ahead and make an adjudication on this statute. But with respect thereto I desire to make some further observations. The first is that any such statute should state the regulation it imposes with suffi-

cient certainty and clarity that persons of ordinary intelligence will be able to understand and ascertain *from the statute itself* what it means, and thus be enabled to comply with its requirements.[1] Moreover, it should not delegate the legislative function to some official such as a "Commissioner of Public Safety" so that he might, by his own ukase, set arbitrary or unreasonable standards which are neither known nor made reasonably accessible to the people they affect. Beyond this, even if such an arbitrary procedure were accepted as proper, there certainly should be provision made for some method of publicizing, or otherwise advising or making available to the public, information concerning the standard set. And all of the foregoing should be ascertainable within the four corners of the statute itself. The statute as set forth herein does not meet that test and is unenforceable for vagueness.[2]

I would decide this case on the bases stated above. Nevertheless, I appreciate the fact that the decision of the court goes to the heart of a more fundamental matter: Assuming as a hypothesis that there was adequate proof of violation of a properly drafted law requiring motorcyclists to wear helmets, would a conviction thereun-der be sustained? This, I confess, poses an interesting and troublesome question. It is another example of the age-old and frequently-recurring controversy between the rights of an individual as compared to the rights of the group. In my opinion the answer depends upon where the greater emphasis is placed.

I have no reason to disagree that it is desirable for a motorcyclist to wear a helmet any more than that it is desirable for him to brush his teeth, wash his ears, or wear a coat in cold weather, or any number of things pertaining to personal behavior which may be beneficial for one's personal health, safety or welfare. But in such matters the fundamental premise is that each person should be accorded the highest degree of individual freedom of action consistent with respecting similar rights in all others. The correlative of this is that his rights and conduct can be restricted or prohibited if the greater good, the protection of the public health, safety or welfare is sufficiently involved to justify such restriction of individual rights. The application of that principle to this case requires consideration as to the degree this so-called "helmet law" is designed to protect the public as compared to the protection of the individual himself.

1. Skaggs Drug Centers, Inc. v. Ashley et al., 26 Utah 2d 38, 484 P.2d 723 (decided April 1971).

2. The reference to Appendix A in respondent's brief, not a part of this record, which respondent apparently attempts to gratuitously import into this record, even if so considered, is no more comprehensible than the statute, and has all of the frailties pointed out in this dissent.

I am not quite overcome by the boldly declared generalities that "this law is for the protection of the public"; nor with what impresses me as the somewhat specious attempts to make it appear to be so rather than for the protection of the individual motorcyclist. Nearly all of the vehicles driven by the public, certainly more than 95 per cent, are automobiles and trucks. In any collision they certainly have a great advantage over the much lighter motorcycle; and it seems to me that in any collision the damage or injury to them (the public) would not be appreciably affected by whether the motorcyclist had on a helmet, or even a suit of armor, or not. I likewise think it is but an unsubstantial and conjectural figment, percentagewise, that motorcyclists might be struck by a pebble, disabled and thus made erratic drivers. In sum, the "helmet law" impresses me as being at least 95 per cent for the protection of the motorcyclist (which may be a good thing but it is his own business), with the rest of the effect, and a very minimal part, being for the protection of the public.

If the conclusion is to be based upon the possibility that they may become hospitalized, or on welfare, that opens a wide door indeed to paternalistic controls over innumerable aspects of human conduct as to what may or may not be good for one's individual health, morals or safety. The difficulty is that if the obliteration of individual rights is permissible whenever there is any possibility, even indirect or remote, of injury to the public, then the line of demarcation as to the permissible intrusions of law, and its implementing functionaries, into conduct which should be one's private and personal concern becomes blurred almost to the vanishing point.

I do not see how this court's decision can take much comfort in mere reference to a "greater number" of jurisdictions as giving it support.[3] Considerations of legal concept, reasoning and policy should carry much more weight.[4] This statute is a good example of the continuous process of imposing ever more limitations upon individual freedoms. This results from the combined bureaucratic and legislative ingenuity discovering practically everything everyone does that can be regulated, then implementing it with the imposition of multifarious duties, applications, specifications, procedures, inspections and fees. Howsoever necessary this may be in certain phases of our complex society, caution and restraint should be exercised not to destroy the spirit of individual liberty which has

3. See cases cited in footnote 2 of main opinion.

4. American Motorcycle Ass'n v. Davids, 11 Mich.App. 351, 158 N.W.2d 72 (1968); Illinois v. Fries, 42 Ill.2d 446, 250 N.E. 2d 149 (1969); State v. Betts, 21 Ohio Misc. 175, 252 N.E.2d 866 (1969).

nurtured the initiative and enterprise which created the whole structure and upon which its continuance depends. Personal freedom should be given preference, except only where there is some compelling, or at least preponderant reason to restrict it for the common good.

It is well to reflect that history from ancient to modern times is dotted with examples of governments which have extended their controls until they have "controlled" themselves into decay and out of existence. As long ago as ancient Rome, the wise man, Tacitus, declared:

> When the government is most corrupt, the laws are most multiplied.

Again in the era of the origins of our own government, one of the most perceptive of the founding fathers, James Madison, wrote:

> I believe there are more instances of the abridgement of the freedom of the people by gradual and silent encroachments of those in power than by violent and sudden usurpations.

The statute here under consideration joins the onward march of the ever-increasing volumes of regulatory laws concerning which it is extremely questionable whether the benefits outweigh the burdens in the

loss of personal freedoms and the expanding bureaucracy involved in their enforcement. I have interposed this dissent as an objection to what appears to be a limitless process of spreading tentacles of control into what ought to be matters of personal and private conduct. There ought to be a halt somewhere, and in my judgment this law reaches that point.[5] (All emphasis added.)

CALLISTER, C. J., concurs in the views expressed in the dissenting opinion of CROCKETT, J.

---

5. To footnote 3 of the main opinion, which adds a reference to this dissent, I make these comments: Once this court acquires jurisdiction, it decides the case on the merits on all issues. The parties so as-

sumed and did not raise that point. Nor, according to their briefs, did either party regard the quoted colloquy as a "stipulation."