PEOPLE v POUCHER

(CITY OF ADRIAN v POUCHER)

Docket No. 58074.—Decided December 21, 1976. On application by the
defendant for leave to appeal the Supreme Court, in lieu of
granting leave to appeal, affirmed the decision of the Court of
Appeals.

Glenn W. Poucher was cited for operating a motorcycle while not
wearing a crash helmet, in violation of an ordinance of the City
of Adrian. The district court quashed the summons on the
grounds that the ordinance was unconstitutional. The Lenawee
Circuit Court, Rex B. Martin, J., affirmed; the Court of Appeals,
McGregor, P. J., and T. M. Burns and N. J. Kaufman, JJ.,
reversed, expressly declining to follow an earlier decision of the
Court of Appeals (Docket No. 23294). Defendant applies for
leave to appeal. *Held:*

There is a distinction between regulations which solely pro-
tect the individual from himself, and those which primarily
protect the individual and secondarily protect society as a
whole. Wearing a helmet is a minor burden, the effects of
which benefit not only both parties involved in an accident, but
also society as a whole. The Legislature is not limited to
measures intended to prevent accidents in furthering highway
safety; it may also design a highway safety program to reduce
the consequences of accidents. This exercise of the police power
interferes with the personal liberties of some citizens, but
changes in transportation, including the increase in the num-
ber of motorcycles, have expanded the permissible legislative
infringement on individual liberties in the area of highway
safety to protect the public safety and the common welfare.

Affirmed.

Justice Levin concurred in a separate opinion. He wrote that
there is substantial evidence that the wearing of helmets by
motorcyclists tends to reduce loss of life and the severity of
injury in traffic accidents. The Legislature may regulate com-
peting uses of the highways, and to this end may reasonably
require that helmets be worn with a view to mitigating poten-
tial civil and criminal liability of drivers who collide with
motorcycles. There is no need to advert to the issue of regula-

tion of a minority in a situation where the character of the legislation is not defined by the societal conflict which it regulates.

Chief Justice Kavanagh dissented on the ground that the protection of an individual from himself is not among the proper functions of government, and the ordinance does not have a relationship to the public health, safety, and welfare. The ordinance is an unconstitutional infringement on the individual's right to privacy.

67 Mich App 133; 240 NW2d 298 (1976) affirmed.

*James Edward Sheridan,* Assistant City Attorney, for the people.

*Beardsley, Forsthoefel & Crause* for defendant.

PER CURIAM. In *American Motorcycle Association v Department of State Police,* 11 Mich App 351; 158 NW2d 72 (1968), the Court of Appeals held unconstitutional a statute requiring a motorcyclist to wear a crash helmet.[1] In this case, at 67 Mich App 133; 240 NW2d 298 (1976), the Court of Appeals declined to follow *American Motorcycle Association, supra,* and upheld ordinance language identical to the statute voided by the *American Motorcycle Association* decision. Defendant has applied for leave to appeal. In lieu of leave to appeal, pursuant to GCR 1963, 853.2(4), we affirm the judgment of the Court of Appeals.

Defendant argues that the ordinance is not a valid exercise of the police power, but rather an unlawful invasion of individual rights.

"[A] large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the

---

[1] MCLA 257.658(d); MSA 9.2358(d). Within two months, the Legislature had amended the section to provide that a motorcycle must be equipped with, and carry when it is being operated, crash helmets. 1968 PA 141. In 1969 PA 118, however, the Legislature reenacted its original language.

protection of such interests [citations omitted]. To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose * * * ". *Lawton v Steele*, 152 US 133, 136, 137; 14 S Ct 499; 38 L Ed 385 (1894).

Defendant's challenge is to the first point: whether the interests of the public generally require interference with his right to drive a motorcycle without a helmet.

The Legislature has the power to control and regulate the use of the highways. *Smith v Wayne County Sheriff,* 278 Mich 91, 96; 270 NW 227 (1936). Moreover, "if the relation between the statute and the public welfare is debatable, the legislative judgment must be accepted", because of the presumption of constitutionality afforded a statute. *Grocers Dairy Co v Dept of Agriculture,* 377 Mich 71, 76; 138 NW2d 767 (1966).

"For the state itself to legislate in a manner that affects the individual right of its citizens, the state must show that it has a sufficient interest in protecting or implementing the common good, via its police powers, that such private interests must give way to this higher interest." *Kropf v Sterling Heights,* 391 Mich 139, 157; 215 NW2d 179 (1974).

New York pioneered in the area of motorcycle helmet regulation. A memorandum from the Department of Motor Vehicles to the New York Legislature evinces a concern for personal injuries and deaths attributable to motorcycle accidents:

"The number of accidents involving motorcycles is increasing rapidly. In fact, motorcycle accidents in-

creased by 105% in 1965 as compared to 1964, while
the total registration of these vehicles increased by
83%. Fatalities increased by 63.6% and personal injury
accidents by 100%. A summary of the Department
statistics indicates that 89.2% of the motorcycle acci-
dents result in injury or death and almost all fatalities
occurring as a result of such accidents involve head
injuries. Most of these fatalities could have been
avoided, or the severity lessened by the use of a proper
helmet." McKinney's 1966 Session Laws of New York,
pp 2961–2962.

Michigan and Massachusetts quickly followed the
New York lead. By 1967, the helmet requirement
was a Federal minimum standard to which all
states were required to conform.[2]

There is some evidence that the requirement is
effective. During 1967, states with a helmet re-
quirement recorded a decrease in motorcycle
deaths by as much as 50%, while a major popula-
tion state without a helmet requirement had a 9%
increase.[3] The growth in motorcycle registrations
continues unabated,[4] and the problem motivating
the state legislatures in the late 1960's remains a
substantial concern.[5]

_____

[2] United States Department of Transportation, *National Uniform
Standards for State Highway Safety Programs,* H R Doc No 138, 90th
Cong, 1st Sess 3–4 (1967).

[3] Note, *Michigan Statute Requiring Motorcyclists to Wear Protec-
tive Helmets Held Unconstitutional,* 67 Mich L Rev 360, fn 3 (1968).

[4] Motorcycle registrations increased from 786,300 in 1963 to 4,969,-
000 in 1974. There has been a corresponding increase in the number
of motorcyclist's deaths from 911 (0.48 per 100,000 population) to
3,415 (1.62 per 100,000 population). United States Department of
Transportation, *Traffic Safety '74: A Report on Activities Under The*
*Highway Safety Act of 1966,* A-11, A-13.

[5] The Traffic Safety Report, *supra,* noted an increase of 14% in
registrations of two-wheelers between 1973 and 1974. The "growing
disparity in the size and weight of the mixture of vehicles on the
road" is one of five factors cited by the Department of Transportation
increasing the risk and compounding the hazard of driving. In this
mixture, motorcycles are identified as "the most vulnerable". *Traffic
Safety '74, supra,* p 5.

We believe there is a distinction between regulations which *solely* protect the individual from himself, and those which *primarily* protect the individual and *secondarily* protect society as a whole.[6] More is involved than the unfettered freedom of the cyclist. For example, the ordinance benefits the driver of a vehicle which may accidentally collide with a motorcyclist. Since the helmet is designed to reduce injury to the cyclist, it also has a concomitant effect on the status of the automobile driver. If the helmet succeeds in mitigating what would otherwise be a fatal injury, then not only has the cyclist survived, but the automobile driver has not killed anyone.

Government agencies have gathered impressive statistics on the increased hazard associated with these vehicles, as compared to enclosed transportation. The helmet ordinance is therefore a creative, relatively nonintrusive response of government to protect the public from detrimental technological change. Wearing a helmet is a minor burden, the effects of which benefit not only both parties involved in an accident, but society as a whole. Enforcement of the provision is open and public. Because the cost of the safety device is not only low, but technologically simple to achieve, it does not unduly burden the use of motorcycles.

In furthering highway safety, the Legislature is not limited to measures intended to prevent accidents; it may also design a highway safety program to reduce the consequences of accidents. The changes in transportation, including the accelerated growth of motorcycles, have expanded the concept of permissible legislative infringement on individual liberties in this area. *Bisenius v Karns,* 42 Wis 2d 42; 165 NW2d 377, 381–384 (1969).

Affirmed.

[6] *State v Cotton,* 55 Hawaii 138; 516 P2d 709, 710 (1973).

WILLIAMS, COLEMAN, FITZGERALD, LINDEMER, and RYAN, JJ., concurred.

LEVIN, J. *(concurring).* There is substantial evidence, as set forth in the opinion of the Court, that the wearing of helmets by motorcyclists tends to reduce loss of life and the severity of injury in traffic accidents.

The ordinance, therefore, benefits not only cyclists but also drivers of other vehicles who collide with them and who may be required to respond civilly or criminally for resultant death or injury.

The government may regulate competing uses of the highways, and to this end may reasonably require that helmets be worn with a view to mitigating potential civil and criminal liability of drivers who collide with motorcycles, although the regulation may also reflect a paternalistic concern for cyclists who prefer to assume the risk of not wearing them.

Since this legislation is a reasonable regulation of conflict arising from competing interests of societal groups, there is no need to advert to the question of regulation of a minority in a situation where the character of the legislation is not defined by the societal conflict which it regulates.

KAVANAGH, C. J. *(dissenting).* The Adrian city ordinance involved here, identical to the statute condemned in *American Motorcycle Association v Department of State Police,* 11 Mich App 351; 158 NW2d 72 (1968), is an unconstitutional infringement on the individual's right to privacy.

"[A]n individual is free to do whatever he pleases, so long as he does not interfere with the rights of his neighbor or of society, and no government—state or

Federal—has been ceded the authority to interfere with that freedom." *People v Sinclair,* 387 Mich 91, 133; 194 NW2d 878 (1972) (Kavanagh, J., dissenting).

The protection of an individual from himself is not among the proper functions of government.

"[O]therwise, there would be no restriction or limitation to this power, and the State could regulate an individual's life, his way of living, and even his way of thinking. The statute is not concerned with the preservation of public safety, health, order, morals, or welfare; and though the headgear requirement may be beneficent, nevertheless, it is unconstitutional because it attempts to infringe upon and stifle the fundamental personal right of liberty, under which each individual may act as he sees fit to preserve his own safety if he does not harm others in doing so.

"The fact that the general public may consider it foolhardy to ride a motorcycle without a safety helmet is alone insufficient basis or justification for defining the nonuse of a helmet a criminal offense. I believe that our State Constitution affords one the privilege of making a fool of himself if he so desires, so long as his action does not bring significant harm to the general public." *State v Cotton,* 55 Hawaii 138, 147–148; 516 P2d 709, 714–715 (1973) (dissenting opinion).

In *State v Acker,* 26 Utah 2d 104, 111; 485 P2d 1038, 1043 (1971), Justice Crockett, dissenting, stated forthrightly the danger of upholding such laws as this:

"The statute here under consideration joins the onward march of the ever-increasing volumes of regulatory laws concerning which it is extremely questionable whether the benefits outweigh the burdens in the loss of personal freedoms and the expanding bureaucracy involved in their enforcement. I have interposed this dissent as an objection to what appears to be a limitless process of spreading tentacles of control into what

ought to be matters of personal and private conduct. There ought to be a halt somewhere, and in my judgment this law reaches that point."

As the Court of Appeals correctly observed in *American Motorcycle Association v Department of State Police, supra,* "This statute has a relationship to the protection of the individual motorcyclist from himself, but not to the public health, safety, and welfare". 11 Mich App 351, 358; 158 NW2d 72 (1968).

The judgment of the trial court that the ordinance is unconstitutional should be reinstated.