Glenn R. Morton, J.
The defendant was charged with a violation of subdivision 6 of section 381 of the Vehicle and Traffic Law of the State of New York for allegedly operating a motorcycle on February 15, 1967 without a protective helmet. The charge was laid before the Special Sessions Court for the Town of Oakfield and on April 26, 1967 Town Justice, Richard D. Yunker, held the statute unconstitutional and dismissed the information (53 Mise 2d 584). The People now appeal to this court. The defendant appeared at the hearing on this appeal but did not participate in person or by an attorney. The American Motorcycle Association and Metropolitan Cycle Association requested and were granted permission to appear as amici curiæ.
Subdivision 6 of section 381 of the Vehicle and Traffic Law provides that: “ It shall be unlawful, on and after January first, *389 nineteen hundred sixty-seven, for any person to operate or ride upon a motorcycle unless he wears a protective helmet of a type approved by the commissioner. Such a helmet must be equipped with either a neck or chin strap and be reflectorized on both sides thereof. The commissioner is hereby authorized and empowered to adopt and amend regulations covering the types of helmets and the specifications therefor and to establish and maintain a list of approved helmets which meet the specifications as established hereunder. ’ ’
The only question raised on this appeal is whether the instant statute is unconstitutional. The issues framed in this regard are whether the statute is sufficiently clear and definite, amounts to an improper delegation of legislative powers, encompasses a valid exercise of police power by the State of New York, is discriminatory so as to deny the defendant equal protection of laws, is an unreasonable burden on interstate commerce, and contemplates an infringement on the defendant’s right of privacy.
While it is well settled that courts have the power to determine whether a statutory enactment transcends the limits imposed by the Federal or State Constitutions (Matter of Sherrill v. O’Brien, 188 N. Y. 185); the exercise of this right is a grave responsibility (People v. Beakes Dairy Co., 222 N. Y. 416) and requires great caution (People v. Budd, 117 N Y. 1; People ex rel. Bryant v. Zimmerman, 241 N. Y. 405). To warrant intervention by the courts, the challenged legislation must be manifestly, undoubtedly, clearly, substantially and palpably inconsistent with constitutional standards (People ex rel. Carter v. Rice, 135 N. Y. 473; Thompson v. Wallin, 276 App. Div. 463; Matter of Hotel Assn. v. Weaver, 3 N Y 2d 206; Matter of Davison, 137 Misc. 852, affd. 236 App. Div. 684; Matter of Zorach v. Clauson, 303 N. Y. 161). The rationale for this caveat is the underlying principle that the Legislature is presumed to have acted within the limits of its authority (Wiggins v. Town of Somers, 4 N Y 2d 215).
A determination of the validity of the instant statute depends largely on the ability of the State to regulate the proscribed conduct under its so-called police power. The police power of the State is a basic right inherent in all civilized government, (Ives v. South Buffalo Ry. Co., 201 N. Y. 271, and is loosely defined as the means by which the Legislature exercises a supervision over matters involving the common welfare, and enforces the observance, by each individual member of society, of the duties which he owes to others and to the community at large (People v. King, 110 N. Y. 418). While it is the least limitable *390 of government powers, it is in addition to constitutional limitations, required to have a purpose falling within the perview of the police powers (People v. Faxlanger, 1 A D 2d 92, affd. 1 N Y 2d 393), reasonably designed to effectuate the stated purpose (People v. Munoz, 9 N Y 2d 51), and it must not be arbitrary or oppressive (Teeval Co. v. Stern, 301 N. Y. 346).
The instant subdivision (together with four others also relating to motorcycles) was enacted at the request of the Department of Motor Vehicles following an extensive study by a special committee appointed by the Commissioner (L. 1966, ch. 979). The departmental memorandum to the Legislature (see McKinney’s 1966 Sess. Laws of N. Y., p. 2961), citing the results of this study, stated that “ The number of accidents involving motorcycles is increasing rapidly. In fact, motorcycle accidents increased by 105% in 1965 as compared to 1964, while the total registration of these vehicles increased by 83%. Fatalities increased by 63.6% and personal injury accidents by 100%. A summary of the Department statistics indicates that 89.2% of the motorcycle accidents result in injury or death and that almost all fatalities occurring as a result of such accidents involve head injuries. Most of these fatalities could have been avoided, or the severity lessened, by the use of a proper helmet ”. In recommending the proposed legislation, the department further related that such “ should go far in protecting the drivers and passengers on motorcycles ”.
The purposes for which the police power may be validly exercised are varied and include matters which affect the general welfare of the people (Matter of Joseph Burstyn, Inc. v. Wilson, 303 N. Y. 242, revd. on other grounds 343 U. S. 495); together with areas covering public health and safety (Wiggins v. Town of Somers, supra). The extent of this concern is substantial, and in construing Sunday labor laws, it has been held that “ It is to the interest of the state to have strong, robust, healthy citizens, capable of self-support, of bearing arms and of adding to the resources of the country. ” (People v. Havnor, 149 N. Y. 195, 203-204.)
Viewed from this standpoint and on the factual situation (which this court must accept; People ex rel. Kemmler v. Durston, 119 N. Y. 569) giving rise to the instant enactment, it is apparent that the challenged legislation requiring the wearing of a protective helmet for self-protection is a valid purpose of legislative action under the police power of the State. Indeed, the inherent danger of operating a motorcycle,.not only to the driver but to other users of the highway, has likewise been considered in upholding the validity of this statute as a valid *391 objective of the State’s police power (People v. Schmidt, 54 Misc 2d 702).
Given the existence of a proper purpose, it still remains that the means undertaken to accomplish it are reasonable and not oppressive or discriminatory. A determination of this issue depends upon existing circumstances, contemporaneous conditions, the object sought to be obtained and the necessity or lack thereof for the required legislation (Vernon Park Realty v. City of Mt. Vernon, 122 N. Y. S. 2d 78, affd. 282 App. Div. 890, affd. 307 N. Y. 493).
Considering the nature of a motorcycle (the intrinsic vulnerability of the operator and speed attainable), together with the circumstances set forth in the departmental memorandum, it is apparent that motorcycles are readily distinguishable from other vehicles, and that the means employed in this legislation are reasonably appropriate to accomplish the desired purpose and are not unduly oppressive.
The Legislature may enact laws prohibiting that which is harmful to the welfare of the people, even though such interferes with the liberty of the individual, so long as it is reasonable (Matter of People [Title & Mtge. Guar. Co.], 264 N". Y. 69). While concededly the instant legislation may infringe on the rights of the individual, it is equally apparent that such is incidental to a valid exercise of the police power and is not unreasonable. When the sole object and general tendency of legislation is to promote public welfare, there is no invasion of the Constitution even if enforcement of the law interferes to some extent with liberty or property (Matter of Viemeister, 179 N. Y. 235). Likewise, a valid exercise of police power is not rendered invalid because it may incidently affect interstate commerce (Rueffer v. Department of Agriculture & Markets, 279 N. Y. 16). Furthermore, while these regulations apply only to motorcycles, it is not discriminatory and equal protection is accomplished when all of a same class are treated in a like manner (Matter of Engelsher v. Jacobs, 5 N Y 2d 370).
The established rule is that the Legislature may delegate to a subordinate body the discretionary power to execute and administer its law, provided a reasonably clear standard is formulated to govern the exercise of discretion by the subordinate body (Packer Coll. Inst. v. University of State of N. 7., 298 N. Y. 184). The final analysis is one of degree and the test is the completeness of the statute so that no part of the legislative function is left to the judgment of a delegate (Cleveland v. City of Watertown, 222 N. Y. 159). An examination of the instant statute reveals that it meets this test. The use of pro *392 tective helmets is an accepted and widely used safety device in our society. A standard by its nature may be a general one and nonetheless valid if it is capable of reasonable application under the circumstances (Matter of Maxwell v. Klaess, 192 Misc. 939). Similarly, the statute is not so vague or indefinite so as to render it invalid. (See People v. Schmidt, supra.)
For the foregoing reasons, the order of the learned Justice dismissing the information should be reversed and the matter remanded for further proceedings.