227 So.2d 489 (1969)
STATE of Florida, Appellant,
v.
Thomas E. EITEL and Clyde L. Thompson, Appellees.
No. 37787.
Supreme Court of Florida.
October 15, 1969.
*490 Earl Faircloth, Atty. Gen., Wallace E. Allbritton, Asst. Atty. Gen., and David H. Bludworth, Asst. County Sol., for appellant.
John M. Callaway, Lake Worth, and Joseph Valantiejus, Lake Park, for appellees.
MANN, ROBERT T., District Court Judge.
Any man's death diminishes me.
 John Donne, Devotions XVII.
No one pretends that actions
should be as free as opinions.
 John Stuart Mill, On Liberty.
Does a motorcyclist have a constitutional right to ride the highways without the protective helmet and goggles or face mask the legislature says he must wear?[1] The trial judge thought so. Michigan and Louisiana courts have agreed.[2] But others have upheld similar statutes, declaring that the danger of flying stones is likely to distract the cyclist and send him hurtling into the path of motorists,[3] or that "it is to the interest of the state to have strong, robust, healthy citizens, capable of self-support, of bearing arms, and of adding to the resources of the country."[4] We approve without hesitation the requirement of protection for the eyes. Any collision between the naked eyeball of the cyclist and the dirt increasingly airborne in our time is likely to pose a menace to others. But we ought to admit frankly that the purpose of the helmet is to preserve the life and health of the cyclist, and for some more divinely ordained and humanely explicable purpose than the service of the state.
*491 The search for precedent is often frustrated, but we believe that society has an interest in the preservation of the life of the individual for his own sake. Suicide, for example, has been a common-law crime for centuries.[5] But we find uneasiness in American legislatures and courts when dealing with self-preservation. They are inclined to require others to furnish the individual the means for his own protection. Employers are required to furnish safety equipment;[6] automobile manufacturers are required to furnish seat belts.[7] Or they incline to emphasize protection of others rather than self. Those religious cultists who handle snakes were forbidden to do so in the name of public safety,[8] for example.
We hold that the legislature may impose a minimal inconvenience which affords effective protection against a significant possibility of grave or fatal injury. We have known the pleasure of wind in our faces, but it is relative: death has come with increasing and alarming frequency to motor-cyclists in recent years. Seventy-seven per cent of the motorcycle accident deaths studied by a California physician were caused by craniocerebral injury with no potentially fatal trauma to other parts of the body.[9] A New York legislative report, citing the rapid increase in number of motorcycle accidents, stated that 89.2% of these accidents resulted in injury or death and that almost all fatalities involved head injuries, most of which could have been avoided or ameliorated by the use of a proper helmet.[10] An orthopedic surgeon testified in this case that he had cared for six persons injured in motorcycle crashes while wearing protective helmets. None had severe head injury. The inconvenience to the person will vary, but the danger is real and the protection reasonably adapted to its avoidance.
These unwilling cyclists must obey this law. We admire John Stuart Mill's Essay on Liberty, which their counsel cite to persuade us that the State of Florida has unconstitutionally infringed Eitel's and Thompson's right to be let alone. But Mill said there that "no person is an entirely isolated being; it is impossible for a person to do anything seriously or permanently hurtful to himself, without mischief reaching at least to his near connections, and often far beyond them." If he falls we cannot leave him lying in the road. The legislature may constitutionally conclude that the cyclist's right to be let alone is no more precious than the corresponding right of ambulance drivers, nurses and neurosurgeons.
The statute requires that the protective equipment meet the standards of the highway Safety Act of 1966.[11] Standard 4.4.3, promulgated after the enactment but before the effective date of the Florida act, leaves the specifications to the state. The Department of Public Safety adopted Chapter 295G of its Rules months before these charges were brought. We find no unconstitutional delegation of power, nor any vagueness here. Indeed, we think it wise for the Legislature, which stated its purpose with sufficient clarity, to leave to administrative officials the specification of impact strength and the like.
Reversed and remanded.
ROBERTS, Acting C.J., and DREW, CARLTON, ADKINS and BOYD, JJ., and MELVIN, Circuit Judge, concur.
NOTES
[1] Florida Stats. (1967) § 317.981, F.S.A. Such statutes have become commonplace since the enactment of the Highway Safety Act of 1966, 23 U.S.C.A. § 401 et seq. See Note, Constitutionality of Mandatory Motorcycle Helmet Legislation, 73 Dick. L.Rev. 100 (1968), an excellent compilation of statutory and case references. See also Note, The Validity of the Motorcycle Helmet Legislation, 30 U.Pitt.L. Rev. 421 (1968).
[2] American Motorcycle Association v. Davids, 11 Mich. App. 351, 158 N.W.2d 72 (1968); Everhardt v. City of New Orleans, 208 So.2d 423 (La. App. 1968), reversed 253 La. 285, 217 So.2d 400 (1968), 3 Justices dissenting. See Note, Constitutional Law  Police Power  Michigan Statute Requiring Motorcyclists to Wear Protective Helmets Held Unconstitutional, 67 Mich.L.Rev. 360 (1968); Comment, 71 W.Va.L.Rev. 191 (1969); Comment, 45 N.D.L.Rev. 295 (1969).
[3] State ex rel. Colvin v. Lombardi, 241 A.2d 625 (R.I. 1968).
[4] People v. Carmichael, 56 Misc.2d 388, 288 N.Y.S.2d 931 (Genesee Co.Ct. 1968), quoting from People v. Havnor, 149 N.Y. 195, 43 N.E. 541, at 544, 31 L.R.A. 689 (1896)). For other opinions sustaining the validity of such statutes see State v. Anderson, 3 N.C. App. 124, 164 S.E.2d 48 (1968), affirmed 275 N.C. 168, 166 S.E.2d 49 (1969); State v. Odegaard, 165 N.W.2d 677 (N.D. 1969); Com. v. Howie, 238 N.E.2d 373 (Mass. 1968); Bisenius v. Karns, 42 Wis.2d 42, 165 N.W.2d 377 (1969), Everhardt v. New Orleans, 253 La. 285, 217 So.2d 400 (1968) and cases cited in law review notes 1 and 2, supra. Ex parte Smith, Tex.Cr.App. 1969, 441 S.W.2d 544; See cases cited under West's Digests "Automobile,"
[5] Hales v. Petit, 1 Plowd. 262 (1561).
[6] See Fla.Stats. § 440.56 (1967), F.S.A.
[7] See 15 U.S.C.A. § 1381 et seq. and standards adopted thereunder.
[8] State v. Massey, 229 N.C. 734, 51 S.E.2d 179 (1949), cert. den. sub nom. Bunn v. North Carolina, 336 U.S. 942, 69 S.Ct. 813, 93 L.Ed. 1099 (1949).
[9] Graham, Fatal Motorcycle Accidents, 14 J.For.Sci. 79 (1969).
[10] McKinney's Session Laws of New York 1966, at p. 2961.
[11] 23 U.S.C.A. § 401 et seq.