**COMMONWEALTH of Kentucky, Appellant,**

v.

**Richard T. COFFMAN, Appellee.**

Court of Appeals of Kentucky.

May 1, 1970.

John B. Breckinridge, Atty. Gen., John B. Browning, Asst. Atty. Gen., Frankfort, for appellant.

George H. Logan, Louisville, for appellee.

EDWARD P. HILL, Jr., Chief Justice.

By an Act (KRS 189.285) of the 1968 Regular Session of the General Assembly, all persons operating or riding motorcycles are required to wear protective helmets of the type approved by the Commissioner of Public Safety.[1] Failure to comply with this statute is made a misdemeanor under KRS 189.993(11) punishable by a fine of not less than ten dollars nor more than one hundred dollars.

The single question presented on this appeal is the constitutionality of the statute first above mentioned. The important part of the statute is herewith quoted:

"(2) No person shall operate or ride as a passenger on a motorcycle: * * * (c) Unless that person wears approved protective headgear, in the manner prescribed by the commissioner, at all times that the vehicle is in motion."

1. The Act does not designate the "commissioner" whose duty it is to "approve" the type of headgear required. Further confusion results from the inclusion of the Act under Chapter 189 of the Statutes. We think the General Assembly intended the Commissioner of Public Safety to be the proper authority to approve the headgear mentioned in the Act. In fact, the Commissioner of Public Safety has assumed the duty of promulgating rules fixing the standard of headgear required by the adoption of the national standard.

The controversy arose under the following circumstances. The appellee, Richard T. Coffman, was found guilty in the police court of the city of Louisville and was fined $40 for operating a motorcycle without the protective headgear mentioned in the statute. He appealed to the Jefferson Circuit Court where the case was dismissed on the ground that the statute violates the Fourteenth Amendment to the Constitution of the United States. The circuit court found that the statute is an unreasonable exercise of the police powers of the State and unconstitutional and is "an invasion of the liberty of the individual and of the right to be unmolested even by well-meaning governmental authority." From the circuit court judgment, the Commonwealth prosecutes this appeal pursuant to KRS 21.-140(3).

The Commonwealth argues (1) the statute in question implements the National Highway Safety Act of 1966, 23 U.S.C. § 402(a); (2) the statute bears a real and substantial relation to the public health, safety and general welfare and is therefore a reasonable exercise of the police power of the State; (3) the placing of motorcycle operators and riders in a separate class for purposes of regulation is a reasonable classification and there is no denial of equal protection of the laws; and (4) consequently, the Act is constitutional.

The appellee presents a counterargument to that of appellant under two headings. First, he says the statute is an unreasonable exercise of the police power of the State because it restricts individual liberties without promoting the public health, safety and general welfare; and second, the statute denies equal protection of law in that it imposes a restriction only upon a small segment of motor vehicle operators.

First we address the question of the impact, if any, of the National Highway Safety Act of 1966 on the constitutionality of the statute in question. In considering the National Highway Safety Act, we note with interest a study and some statistics concerning motorcycle highway accidents in the state of New York occurring during the years 1964 and 1965. For this statistical information we quote the following from People v. Carmichael, 56 Misc.2d 388, 288 N.Y. S.2d 931, at page 934:

" 'The number of accidents involving motorcycles is increasing rapidly. In fact, motorcycle accidents increased by 105% in 1965 as compared to 1964, while the total registration of these vehicles increased by 83%. Fatalities increased by 63.6% and personal injury accidents by 100%. A summary of the Department statistics indicates that 89.2% of the motorcycle accidents result in injury or death and that almost all fatalities occurring as a result of such accidents involve head injuries. Most of these fatalities could have been avoided, or the severity lessened, by the use of a proper helmet'. In recommending the proposed legislation, the department further related that such '* * * should go far in protecting the drivers and passengers on motorcycles' ".

While the National Highway Safety Act of 1966 requires each state to have a highway safety program, it may or may not be incumbent upon a particular state to adopt such a program. We shall not say "yea" nor "nay" in this regard. But to say the least, the National Highway Safety Act is a potent expression of national policy and the product of a constitutional majority of national lawmakers. Such a policy supported by the revealing statistics of accidents occurring to persons operating and riding motorcycles is a convincing circumstance that demands states take some action, and some forty or more states by now have done so. Insofar as the National Highway Safety Act bears upon the constitutionality of the statute in question, we will only say that the Act has nothing whatever to do with the constitutionality of the statute.

Before getting down to the why and wherefore of the constitutional question we might note that only two states, Illinois and Michigan, have declared acts similar to the one here in question to be unconstitutional. See People v. Fries, 42 Ill.2d 446, 250 N.E.2d 149, and American Motorcycle Association v. Davids, 11 Mich.App. 351, 158 N.W.2d 72.

At least thirteen other states have upheld the constitutionality of similar acts. In Bisenius v. Karns, 42 Wis.2d 42, 165 N.W.2d 377, the Wisconsin Supreme Court in a well-reasoned opinion upheld the constitutionality of a similar act. This case went to the Supreme Court of the United States where the appeal was dismissed "for want of a substantial federal question." 395 U.S. 709, 89 S.Ct. 2033, 23 L.Ed. 2d 655 (1969).

Among other states that have upheld statutes requiring motorcycle operators and riders to wear protective headgear are North Carolina, Louisiana, Rhode Island, Massachusetts, North Dakota, Vermont, Missouri, Florida, Washington, Oregon, and Connecticut. See Everhardt v. City of New Orleans, 217 So.2d 400 (La., 1968); State ex rel. Colvin v. Lombardi, 241 A.2d 625 (R.I., 1968); Commonwealth v. Howie, 238 N.E.2d 373 (Mass., 1968) cert. den. 393 U.S. 999, 89 S.Ct. 485, 21 L.Ed.2d 464; State v. Odegaard, 165 N.W.2d 677 (N.D., 1969); State v. Solomon, 260 A.2d 377 (Vt., 1969); State v. Darrah, 446 S.W.2d 745 (Mo., 1969); State v. Eitel, 227 So.2d 489 (Fla., 1969); State v. Laitinen, 459 P.2d 789 (Wash., 1969); State v. Fetterly, 456 P.2d 996 (Oreg., 1969); State v. Burzycki, 252 A.2d 312 (Conn., 1969).

Since the Missouri court decided State v. Darrah, supra, it had occasion on March 9, 1970, to again decide a case involving the identical questions raised in the present case in State v. Cushman, Mo., 451 S.W.2d 17, to which we refer the reader for a more detailed reason for the results herein reached.

In discussing the question whether a similar act constituted class regulation, the Vermont court said in Solomon, supra, 260 A.2d at p. 380:

"When motorcycle operators are considered as a class, rather than individually, they represent a fair segment of the public and the law is designed not to protect one operator, but all of them.

"Moreover, self-injury may be of such a nature to also invoke a general public concern. The safety statute in question bears an analogy to the statutes which forbid heroin or use of dangerous drugs, or to the safety requirements imposed in the operation of industrial equipment. When such individuals are considered as a class, public safety is involved."

Appellee argues there can be little doubt that the statute in question is unconstitutional if it goes no further than to protect the individual motorcyclist without a substantial relation to the public health, safety and general welfare. See McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222; Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485; Railway Express Agency, Inc. v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533; Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163.

The appellant has listed some "tangible" effects "upon the public" of accidents and deaths due to motorcycle wrecks. Among these "tangible" effects the appellant lists the following: (1) effect upon insurance rates; (2) public hospital services; (3) income tax revenues because of lost man-hours of employment; (4) public services to the disabled; (5) national defense since many motorcyclists are young men; and (6) the State's welfare responsibility for the widow and children of the deceased. In State ex rel. Colvin v. Lombardi, supra, the court said, "we are not persuaded that the legislature is powerless to prohibit individuals from pursuing a course of con-

duct which could conceivably result in their becoming public charges." See also People v. Newhouse, 55 Misc.2d 1064, 287 N.Y.S.2d 713 (1968).

We may also mention our statute prohibiting the use of reptiles in religious services, KRS 437.060, the constitutionality of which was upheld in Lawson v. Commonwealth, 291 Ky. 437, 164 S.W.2d 972 (1942). The display or use of reptiles in religious services is not very likely to effect the health or safety of the public, especially if the preacher keeps a tight grip on the snake. Certainly it should be clear that there is a much greater public interest and welfare in motorcycle safety regulations than in the prohibition of snake handling in religious services.

For the basis upon which the various states have declared constitutional statutes similar to the one questioned here, we refer the reader to the numerous opinions above cited.

We are persuaded that the Act in question is not invalid as unreasonable class legislation. See State v. Solomon, supra.

Unlike four-wheel motor vehicles, the motorcycle has no metal body to protect the occupant. Obviously this type of safety regulation is more for the motorcycle than the automobile. We do not intend to hold that any and all safety devices calculated to prevent injury to or destruction of citizens are the subject of valid regulation by the State under police powers. However, considered in the narrow scope in which the safety device is here presented, we have no hesitancy in holding that the statute in question has a real and substantial relation to the public welfare and is therefore constitutional.

The judgment is reversed with directions for a new trial consistent with this opinion.

All concur.