413 So.2d 1232 (1982)
REX UTILITIES, INC. and United States Fidelity & Guaranty Co., Appellants,
v.
David L. GADDY, As Personal Representative of Karen Sue Gaddy, a Deceased Minor, for the Benefit of the Decedent's Estate; David L. Gaddy, Individually; and Merry A. Gaddy, Individually, Appellees.
No. 79-2141.
District Court of Appeal of Florida, Third District.
April 27, 1982.
Rehearing Denied June 1, 1982.
Steven R. Berger, Miami, for appellants.
High, Stack, Lazenby, Bender, Palahach & Lacasa and Charles R. Stack, Coral Gables, for appellees.
Before HUBBART, C.J., and BASKIN and DANIEL S. PEARSON, JJ.
HUBBART, Chief Judge.
The central issue raised by this appeal is whether a defendant in a negligence action arising out of a motorcycle accident is entitled to introduce evidence and argue to the jury as a comparative negligence defense that the plaintiff was not wearing protective headgear at the time the accident occurred in violation of Section 316.211(1), Florida Statutes (1977), where the defendant establishes that: (1) the plaintiff was of *1233 the class the above statute was intended to protect [i.e., a motorcycle rider], and (2) the injury suffered by the plaintiff in the accident was of the type the statute was intended to prevent [i.e., a head injury]. We hold that such a defendant is not so entitled to prove and argue such a statutory violation as a comparative negligence defense because the above showing, without more, fails to establish, as required by law, that the above statutory violation by the plaintiff was a proximate cause of the plaintiff's head injury. We, accordingly, affirm the final judgment under review.

I
The facts pertaining to the above issue are as follows. The plaintiffs' decedent Karen Gaddy died from a severe head injury when she was thrown from a motorcycle on which she was a passenger when the motorcycle ran over a hidden trench alongside the road. Suit was brought by the estate and parents of Karen Gaddy against the defendant Rex Utilities, Inc. [and its insurer, United States Fidelity & Guaranty Co.] for negligently perpetrating this hazardous condition.
At trial, the defendants sought to introduce in evidence and later argue to the jury as a comparative negligence defense that the plaintiffs' decedent was not wearing protective headgear when the accident occurred in violation of Section 316.211(1), Florida Statutes (1977). The only evidence adduced below on whether the above statutory violation was a proximate cause of the head injury sustained by the plaintiffs' decedent came from the treating neurosurgeon who testified below, outside the jury's presence, as follows:
"Q. Is there a possibility that it [wearing a helmet] would have prevented the death?
A. I have no way of knowing. In my experience I have seen patients who have been dead on arrival from head injuries with helmets on. I have seen other situations where patients came in and they have survived. It is an unpredictable thing.
* * * * * *
Q. Do you feel that a helmet would have lessened the seriousness of that blow and it could have resulted in an injury but not death?
A. Not necessarily.
Q. Can you explain that to me?
A. Yes. I can just draw a conclusion based upon my experience.
When I see a patient come into the emergency room dead on arrival with a head injury with a helmet on, the helmet is not doing anything.
The death is caused by a severe force of impact and not by a helmet. The helmet is designed to absorb just so much impact. I don't know that this particular force would have been prevented by this helmet overcoming the effects of the force. In such cases, the helmet is rendered useless.
Q. Let us not talk about your experience. Let us talk about this case.
A. I cannot draw any conclusions in this case."
Thereafter the trial court specifically invited the defendants to introduce further evidence on the proximate cause issue, but the defendants declined to do so. The trial court, accordingly, precluded the defendants from introducing evidence and arguing to the jury that the plaintiffs' decedent had violated the above statute when the accident occurred and was, therefore, guilty of comparative negligence; specifically, the trial court ruled that the defendants had failed to establish, as required by law, that the statutory violation in this case was a proximate cause of the head injury sustained by the plaintiffs' decedent.
The jury subsequently found for the plaintiffs in this cause and a final judgment was entered thereon. The defendants appeal.

II
The law is well-settled that it is "negligence per se" for a defendant in a negligence action to violate a statute "which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury." *1234 deJesus v. Seaboard Coast Line R.R. Co., 281 So.2d 198, 201 (Fla. 1973). Section 316.211(1), Florida Statutes (1977), which requires motorcycle operators and riders to wear protective headgear,[1] clearly is such an above-stated statute as its sole purpose is "to preserve the life and health of the cyclist" against head injury, State v. Eitel, 227 So.2d 489, 490-91 (Fla. 1969); as such, the statute establishes "a duty to take precautions [i.e., wear protective headgear] to protect a particular class of persons [i.e., motorcycle operators and riders] from a particular injury or type of injury [i.e., a head injury]." deJesus v. Seaboard Coast Line R.R. Co., 281 So.2d at 201. It does not follow, however, that a violation of this type of statute by itself constitutes a case of actionable negligence. "It must also be established by a plaintiff [1] that he is of the class the statute was intended to protect, [2] that he suffered injury of the type the statute was designed to prevent, and [3] that the violation of the statute was the proximate cause of his injury." deJesus v. Seaboard Coast Line R.R. Co., 281 So.2d at 201; see also Stanage v. Bilbo, 382 So.2d 423, 424 (Fla. 5th DCA 1980); Bryant v. Jax Liquors, 352 So.2d 542, 544 (Fla. 1st DCA 1977), cert. denied, 365 So.2d 710 (Fla. 1978); Duncan v. Monark Boat Co., 330 So.2d 843, 844 (Fla. 1st DCA 1976). Moreover, this established law applies with equal force to both a plaintiff who seeks to establish a case of actionable negligence as well as a defendant, as here, who asserts a comparative negligence defense. W. Prosser, Torts 202-03 (4th ed. 1971); compare Clark v. Sumner, 72 So.2d 375 (Fla. 1954).

III
Turning to the instant case, we have no problem in concluding that the trial court was eminently correct in precluding the defendants from introducing evidence and later arguing to the jury that the plaintiffs' decedent was guilty of comparative negligence in this cause by failing to wear protective headgear at the time of the subject accident in violation of Section 316.211(1), Florida Statutes (1977), because no evidence was adduced below, as required by law, that the violation of the above statute was a proximate cause of the head injury sustained by the plaintiffs' decedent. Indeed, the expert testimony adduced in the trial court below established that it was impossible to determine whether the failure of the plaintiffs' decedent to wear protective headgear in any way contributed to the head injury sustained by the plaintiffs' decedent; moreover, the defendants below declined the trial court's specific invitation to introduce any further evidence on the proximate cause issue. As such, the trial court had no alternative but to exclude the subject evidence and argument for failure of the defendants to establish, as required by law, that the violation of the above statute was a proximate cause of the head injury sustained by the plaintiffs' decedent.
The defendants, however, argue that they were entitled to introduce evidence and argue to the jury the above statutory violation as a comparative negligence defense upon a two-step showing that: (1) the plaintiff injured was of the class the statute was intended to protect [i.e., a motorcycle rider], and (2) the injury suffered by the plaintiff was of the type the statute was designed to prevent [i.e., a head injury]; it is urged that the proximate cause element is implicitly established as a permissible jury inference upon this two-step showing. [Appellant's main brief, pp. 19-21]. Although the above two elements were absolute prerequisites under the law for admitting proof of the statutory violation herein and were, as urged, clearly established in this case, we cannot accept the defendants' ultimate conclusion that proof of these two elements, without more, implicitly establishes the third element of proximate cause. Indeed, to accept this position is, in effect, to read out the proximate cause element *1235 altogether as established by prior decisional law in cases of this nature. We specifically decline to do so. Moreover, we are totally unconvinced that State v. Eitel, 227 So.2d 489 (Fla. 1969), requires us to reach a contrary result.
We have carefully considered the remaining contentions urged by the defendants upon this appeal and find them to be without merit. The final judgment under review is, accordingly,
Affirmed.
DANIEL S. PEARSON, Judge, dissenting.
The statute sought to be argued by Rex, Section 316.211(1), Florida Statutes (1977), provides:
"No person shall operate or ride upon a motorcycle unless he is properly wearing protective headgear securely fastened upon his head which complies with standards established by the department."
The trial court held that a party claiming a right to introduce the statute to prove negligence (here the comparative negligence of Karen Gaddy) must first show that (a) the person injured is of the class of persons the statute was designed to protect, (b) the injury suffered was of the type the statute was designed to prevent, and (c) the violation of the statute was a proximate cause of the injury. See deJesus v. Seaboard Coast Line Railroad Company, 281 So.2d 198 (Fla. 1973). It is undisputed that Rex satisfied the first two prongs of deJesus by showing that Karen was a helmetless rider on the motorcycle and that her death was caused by a head injury. But because the trial court determined that Rex did not show that the violation of the statute was a proximate cause of Karen's death, it refused to allow this violation to be considered by the jury.
Rex contends that its burden to show causation is satisfied under the circumstances of the present case by the showing that Karen violated the statute and that her death resulted from a head injury. In my view, Rex's contention is sound if, as a matter of ordinary experience, the particular omission (the failure to wear a helmet while riding upon a motorcycle) might be expected to produce the particular result (death or severe injury resulting from a blow to the head), and that result, in fact, had followed. Under such circumstances, a conclusion is permissible that the causal relation exists. W. Prosser, Law of Torts, § 41, Causation In Fact, at 242-43 (4th ed. 1971).
What, then, is a matter of ordinary experience or common knowledge which, in the stead of other evidence, provides the basis from which the causal sequence may be inferred?
"Thus it is every day experience that unlighted stairs create a danger that someone will fall. Such a condition `greatly multiplies the chances of accident, and is of a character naturally leading to its occurrence.' When a fat woman tumbles down the steps, it is a reasonable conclusion that it is more likely than not that the bad lighting has played a substantial part in the fall. When a child is drowned in a swimming pool, no one can say with certainty that a lifeguard would have saved him; but the experience of the community permits the conclusion that the absence of the guard played a significant part in the drowning. Such questions are peculiarly for the jury; and whether proper construction of a building would have withstood an earthquake, or whether reasonable police precautions would have prevented a boy from shooting the plaintiff in the eye with an airgun, are questions on which a court can seldom rule as a matter of law. And whether the defendant's negligence consists of the violation of some statutory safety regulation, or the breach of a plain common law duty of care, the court can scarcely overlook the fact that the injury which has in fact occurred is precisely the sort of thing that proper care on the part of the defendant would be intended to prevent, and accordingly allow a certain liberality to the jury in drawing its conclusion." Id. at 242-43 (footnotes omitted).
And see W. Malone, Ruminations On Cause-In-Fact, 9 Stanford L.Rev. 60 (1956).
*1236 By enacting Section 316.211(1), our Legislature, in effect, determined that protective headgear "affords effective protection against a significant possibility of grave or fatal injury." State v. Eitel, 227 So.2d 489 (Fla. 1969). Upholding the constitutionality of the identically worded predecessor statute, the Florida Supreme Court noted:
"[D]eath has come with increasing and alarming frequency to motor-cyclists in recent years. Seventy-seven per cent of the motorcycle accident deaths studied by a California physician were caused by craniocerebral injury with no potentially fatal trauma to other parts of the body. A New York legislative report, citing the rapid increase in number of motorcycle accidents, stated that 89.2% of these accidents resulted in injury or death and that almost all fatalities involved head injuries, most of which could have been avoided or ameliorated by the use of a proper helmet. An orthopedic surgeon testified in this case that he had cared for six persons injured in motorcycle crashes while wearing protective helmets. None had severe head injury. The inconvenience to the person will vary, but the danger is real and the protection reasonably adapted to its avoidance." Id. at 491 (footnotes omitted).
Thus, the statute declares the everyday experience; and implicit in the imposition of the duty to wear a helmet is a recognition that a breach of that duty will causally contribute to severe injuries or death, assuming a head injury occurs.[2]
Therefore, in my view, Rex should not have been required to prove any more causation than it did as a predicate to introducing the statute to show Karen's negligence; and if the plaintiffs wanted to show that Karen's negligence did not contribute to the severity of the injury or the death, the burden should have been theirs to make that showing.[3] I would reverse and remand for a new trial.
NOTES
[1] This statute provides as follows:

"No person shall operate or ride upon a motorcycle unless he is properly wearing protective headgear securely fastened upon his head which complies with standards established by the department." § 316.211(1), Fla. Stat. (1977).
A violation of the above statute is deemed an infraction punishable by a civil penalty. §§ 316.655, 318.18, Fla. Stat. (1977).
[2] The present case must be distinguished from cases where there is no duty imposed on the plaintiff. Compare, e.g., Brown v. Kendrick, 192 So.2d 49 (Fla. 1st DCA 1966) (plaintiff's failure to wear seat belts is not contributory negligence in the absence of a law requiring their use); Rogers v. Frush, 257 Md. 233, 262 A.2d 549 (1970) (plaintiff's failure to wear motorcycle protective helmet not admissible where failure occurred three years before state enacted law requiring the wearing of such protective headgear).
[3] Unlike the strict liability case, see, e.g., Sloan v. Coit International, Inc., 292 So.2d 15 (Fla. 1974); Tamiami Gun Shop v. Klein, 116 So.2d 421 (Fla. 1959), in which the causal relation between the statutory violation and the injury need not be shown, and in which, therefore, proof of lack of causation is irrelevant, the present case is simply one in which causation is an issue for the jury to decide, and the violator of the statute, having "made more difficult if not impossible the means of proving the possible damaging results of [her] own act," should have the burden of showing non-causation. See Gardner v. National Bulk Carriers, Inc., 310 F.2d 284, 287 n. 4 (4th Cir.1962), cert. denied, 372 U.S. 913, 83 S.Ct. 728, 9 L.Ed.2d 721 (1963).