CAMPBELL, Judge.
Appellant, a former sheriff of Pinellas County, appeals a final judgment following a jury verdict awarding appellee, a former inmate of the Pinellas County jail system, $34,500 as a result of an accidental injury inflicted by a fellow inmate. Appellee’s injury consisted of having the little finger on his right hand cut off with a pair of pruning shears. We reverse.
Appellant raises three points on appeal:
I. WHETHER APPELLEE PRESENTED A PRIMA FACIE CASE ON WHICH APPELLANT’S LIABILITY CAN BE PREDICATED?
*948 II. WHETHER APPELLANT IS IMMUNE “FROM LIABILITY FOR THE ACTS AND/OR OMISSIONS COMPLAINED OF BY APPEL-LEE?
III. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT’S MOTION FOR NEW TRIAL BECAUSE THE VERDICT OF THE JURY WAS RENDERED THROUGH MISTAKE, MISCONCEPTION AND/OR MISAPPLICATION OF THE LAW OF COMPARATIVE NEGLIGENCE AND/OR DAMAGES?
We are not required to address points II and III, inasmuch as we dispose of the case by answering point I in the negative.
Appellee was an inmate at the medium security center of the Pinellas County jail system. Inmates at the medium security center were county prisoners who were confined to serve county jail time of less than one year. The medium security center was the lowest security classification of the three confinement centers located in Pinellas County at that time, the other two being maximum security centers.
Appellee’s injury occurred around 2:00 p.m., November 12, 1980, appellee’s first day of working outside the perimeter fence at the medium security center. Appellee was assigned to a ground crew of ten to eleven inmates who were clearing vegetation, underbrush and vines around the construction site of the new criminal courts building, which was just outside the perimeter fence. The inmates were divided into two groups, working approximately 100 yards apart. They were supervised by William Mock, a deputy sheriff assigned to the corrections department of the Pinellas County Sheriff. Deputy Mock’s chief duty was to act as guard in charge of all work areas outside the perimeter fence.
The inmates started clearing land and trimming vegetation about 8:00 a.m. on the day of the accident. They used pruning shears, grass slingblades, saws and hoes. They had been instructed in their work by a horticulturist employed by the Pinellas County jail system. The inmates had a lunch break from 11:00 a.m. to 1:00 p.m., and took other unspecified breaks by lying or sitting around the work area. According to Deputy Mock’s testimony, the inmates were only expected to do a reasonable amount of work.
Deputy Mock supervised the inmates by walking periodically back and forth between the groups. The two groups were at each end of a driveway. The evidence indicated the inmates were consistently within Deputy Mock’s view as he walked back and forth between the groups, although there were times he might not have had each individual inmate within his immediate vision.
Deputy Mock testified his basic duty was to supervise the inmates as to security, and to see that there were no problems occurring between them. Because most of the inmates had only a few months to serve, it would have been unusual to expect either a security or disciplinary problem. None of the inmates involved here had been disciplinary problems in the past, and there was no evidence to alert Deputy Mock, or appellant, of any special potential problems. Although appellee testified he had complained to Deputy Mock of others in his work detail lying around and not working steadily, it appears from Deputy Mock’s testimony that a certain amount of “goofing off” among the inmates was expected, and was therefore of no particular concern.
Appellee was injured when he was pulling vines from out of a tree. He testified that some of the inmates, who had been sitting or lying around, got up to go back to work when he warned them that the guard was coming back in their direction, and that “You all better get up and go to work.” One of the inmates using pruning shears started to cut the vines appellee was pulling out of the tree, and as appellee raised his hand, the other inmate accidently cut off his little finger with the pruning shears.
During the one-day trial, only appellee testified as to the circumstances surround *949 ing the accident. Appellee failed to present evidence of any standard of conduct on which appellant’s alleged liability was based. Appellee testified that if Deputy Mock had been in his immediate vicinity at all times, the accident, in his opinion, would not have happened. That testimony alone is not sufficient to establish a standard of care by which appellant can be held liable for the accidental conduct of another inmate. Nonetheless, appellant’s motions for a directed verdict at the close of appel-lee’s case, and at the close of all the evidence, were denied. The trial judge, during the trial, stated the sole issue framed by appellee’s complaint as: “Was there sufficient supervision?” There is not one shred of evidence in the record to establish a standard by which the jury could have legitimately exercised their judgment to answer that question.
Appellee’s sole support for sustaining his judgment comes from the trial judge’s charge to the jury of Florida Administrative Code Rule 33-8.11(4) and (5)(f), as that rule purportedly existed on November 12, 1980. The rule was read to the jury without any explanation as to its purpose or effect.
At trial, appellant’s captain, who was in charge of the medium security center at the time of the accident, testified that the center was operated under chapter 33-8 of the Florida Administrative Code. However, he did not explain the rules, state what they were, nor were they introduced into evidence. Chapter 33-8 is that chapter of the rules of the Department of Offender Rehabilitation that pertains to county and municipal detention facilities. The trial judge’s complete charge to the jury, relative to rule 33-8, was as follows:
Now, you are also instructed that at the time of the accident the rules of the State of Florida Department of Offender Rehabilitation applicable to county municipal detention facilities, which this facility was one, the rules applicable were Florida Administrative Code 33-8.1 sub 4, which reads:
“All prisoners other than minimum security trustees will be under constant, direct supervision at all times when outside the secured areas of the facility.”
The other rules of the Florida Administrative Code 33-8.1, sub 5, sub f reads:
“Tools are not to be used by prisoners not under direct and constant supervision.” >
Appellee relies on the wording of the rule which requires “constant, direct supervision ... outside secured areas ...” and the prohibition against the use of tools when not “under direct and constant supervision.” Appellee argues that since Deputy Mock was walking back and forth between the two groups of inmates who were using tools, they were not under “direct and constant supervision.”
There was no evidence offered to explain what “direct and constant supervision” would entail in order to meet the standard set by that technical rule. Neither can we say that the rule, because of the special and technical nature of its subject matter, is subject to interpretation by the jury according to the ordinary meaning of its terms. Cf. Southern Bell Telephone & Telegraph Co. v. Mobile America Corp., Inc., 291 So.2d 199 (Fla.1974). The jury below was therefore without any valid means to determine whether there had been a violation of the rule so as to constitute negligence on the part of the appellant toward the appellee.
In addition, because the record contains no evidence interpreting the rule, it cannot be said with any degree of certainty, that appellant was a member of the class the rule was intended to protect, or that the injury was of a type intended to be prevented. 38 Fla.Jur.2d 87 Negligence § 54. In fact, we suspect neither was the case in this matter. The title of the rule charged, rule 33-8.11, in 1980, was as it is now, “Security and Control.” It was obviously directed toward preventing escape rather than providing discipline since another section, section 33-8.13 was entitled “Order and Discipline.” While section 33-8.11, the “Security and Control” section, re *950 ferred to “direct and constant supervision,” section 33-8.09, entitled “Programs,” contained specific provisions regarding supervision of working prisoners. That section stated that except for minimum security inmates, prisoners involved in a work “program” must have, as opposed to “direct and constant,” only “constant supervision while outside the secure perimeter of the detention facility.” Rule 33-8.09(17). Thus, even if section 33-8.11 was applicable, and even if there was evidence of a violation of the rule, since it does not appear appellant was in the class sought to be protected by the rule, nor was his injury of the type sought to be prevented, the violation would not constitute negligence per se; it would merely have been, in that case, prima facie evidence of negligence on the part of appellant. It is unclear from the charge given the jury, which standard, if any, they were being instructed to apply.
In either case, a violation of rule 33-8.11 would not necessarily mean there was actionable negligence. The appellee would have to affirmatively establish that he was of the class the rule was intended to protect, and that he suffered injury of the type the rule was intended to prevent, and that the violation of the rule was the proximate cause of his injury. deJesus v. Seaboard Coast Line Railroad Company, 281 So.2d 198 (Fla.1973); Rex Utilities, Inc. v. Gaddy, 413 So.2d 1232 (Fla. 3d DCA 1982); Boles v. Brackin, 411 So.2d 280 (Fla. 1st DCA 1982); Stanage v. Bilbo, 382 So.2d 423 (Fla. 5th DCA 1980); Bryant v. Jax Liquors, 352 So.2d 542 (Fla. 1st DCA 1977). Therefore, had appellee presented evidence that rule 33-8.11 was applicable, that appellant violated that rule, and that the violation was either negligence per se or prima facie evidence of appellant’s negligence, neither of which do we conclude, then because of the intervening act of another inmate, there would also have to be evidence that appellee’s resulting injury was the natural and probable consequence of appellant’s violation of the rule before ap-pellee could prevail. Cone v. Inter-County Telephone & Telegraph Co., 40 So.2d 148 (Fla.1949); Lake Parker Mall, Inc. v. Carson, 327 So.2d 121 (Fla. 2d DCA 1976); Tennessee Corporation v. Lamb Brothers Construction Co., 265 So.2d 533 (Fla. 2d DCA 1972); Spann v. State of Florida, Department of Corrections, 421 So.2d 1090 (Fla. 4th DCA 1982); Guice v. Enfinger, 389 So.2d 270 (Fla. 1st DCA 1980). There was no such evidence.
Appellee’s motions for directed verdict should have been granted. We accordingly reverse and remand for entry of the same.
GRIMES, A.C.J., and SCHOONOVER, J., concur.