517 So.2d 717 (1987)
Robert A. BARNES and Nathan Michael Mashburn, Appellants,
v.
GULF POWER COMPANY, a Maine Corporation, Appellee.
No. BL-20.
District Court of Appeal of Florida, First District.
December 15, 1987.
*718 Ray P. Pope of Shell, Fleming, David & Menge, Pensacola, for appellants.
D.L. Middlebrooks, M. Robert Blanchard and Charles J. Kahn, Jr. of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for appellee.
THOMPSON, Judge.
Appellants, plaintiffs below in this personal injury action, seek review of the trial court's entry of summary judgment in favor of the appellee. The judgment was based on the trial court's alternative findings that no duty was owed the plaintiffs by the defendant or that there was a lack of causal connection between any alleged negligence of the defendant and the plaintiffs' injuries. We agree with the trial court's finding that there was no causal connection between the alleged negligence of the defendant and the plaintiffs' injuries, and affirm.
At approximately 8:00 p.m. on December 27, 1983 the plaintiffs, two telephone repairmen employed by Southern Bell Telephone and Telegraph Company, were brutally attacked by unknown assailants at a work-site near downtown Pensacola. Their complaint alleged that Gulf Power was negligent in maintaining its electrical lines and in misrepresenting that it would send out repairmen to repair the lines, thereby delaying the telephone repair job until after darkness fell and proximately causing plaintiffs' injuries.
Assuming the defendant was negligent as alleged, it is not liable to the plaintiffs if there was an efficient, independent intervening cause of plaintiffs' injuries. This is true even if defendant's negligence resulted in the plaintiffs having to work late and that "but for" their having to work late they might not have been attacked. The defendant's negligence, at most, provided the occasion for the attack and the resulting injuries to the plaintiffs. Department of Transportation v. Anglin, 502 So.2d 896 (Fla. 1987). Normally causation is a jury question, but when reasonable people could not differ, the issue is one of law for the court. The trial judge correctly found under the facts in this case that the attack upon the plaintiffs by the unknown assailants was an independent efficient intervening cause of the plaintiffs' injuries, and properly entered summary judgment in favor of the defendant. AFFIRMED.
WIGGINTON, J., concurs.
ERVIN, J., specially concurs with written opinion.
ERVIN, Judge, specially concurring.
Were it not for the Florida Supreme Court's recent opinion in Department of Transportation v. Anglin, 502 So.2d 896 (Fla. 1987), reversing Anglin v. State of Florida, Department of Transportation, *719 472 So.2d 784 (Fla. 1st DCA 1985), I would have voted to set aside the summary judgment entered in favor of appellee. The rule this court stated in Anglin, subsequently disapproved by the supreme court, was as follows: "Only if reasonable persons could not differ as to the total absence of evidence to support any inference that the intervening cause was foreseeable may the court determine the issue as a matter of law." 472 So.2d at 788. We continued that "the defendants need not have notice of the particular manner in which an injury would occur; it is enough that the possibility of some accidental injury was foreseeable to the ordinarily prudent person." Id. (e.s.)
Our Anglin opinion had been largely influenced by the supreme court's earlier decision in Gibson v. Avis-Rent-A-Car System, Inc., 386 So.2d 520 (Fla. 1980), pertaining to the issue of whether an intervening cause may supersede the negligence of the original actor. Gibson had stated the following rule: "If an intervening cause is foreseeable the original negligent actor may still be held liable. The question of whether an intervening cause is foreseeable is for the trier of fact." 386 So.2d at 522. The supreme court's opinion in Anglin concluded that we had read Gibson too broadly, because in Gibson the conduct of the original negligent actor  unlike that at issue in Anglin  "set in motion a chain of events which resulted in the plaintiff's injuries." 502 So.2d at 898. The court cautioned that "Gibson did not hold, as suggested by the district court's holding below, that all questions involving an intervening cause present a jury question." Id. at 899.
The supreme court's opinion in Anglin serves to clarify a point that may have been obfuscated by certain language in Gibson  the fact that the injury actually suffered may have been remotely or possibly foreseeable, despite the existence of an intervening cause, does not necessarily subject the original actor to liability. This position is strongly supported by the Restatement (Second) of Torts (1965) [hereinafter Restatement]. Section 434(1), thereof, relating to functions of court and jury, states in part:
(1) It is the function of the court to determine
(a) whether the evidence as to the facts makes an issue upon which the jury may reasonably differ as to whether the conduct of the defendant has been a substantial factor in causing the harm to the plaintiff... .
Once the court decides from the facts presented whether an issue exists that should properly be submitted to the jury on legal causation, it is next the jury's function to resolve "whether the defendant's conduct has been a substantial factor in causing the harm to the plaintiff... ." § 434(2)(a) (e.s.). As further explained in comment c to the above section:
The question of what actually occurred in any particular case is for the jury, ... unless the testimony is so undisputed and uncontradictory that there is only one inference which reasonable men could draw from it. If this is the case, the court must determine whether the actor's conduct is a substantial factor in bringing about the plaintiff's harm, unless this question is itself open to reasonable difference of opinion, in which case it is for the jury.
(e.s.) Thus, as the above section and comments make clear, not all questions regarding whether an intervening cause is foreseeable are required to be decided by the trier of fact. It is rather the duty of the trial court to decide initially from the evidence presented whether the defendant's conduct is a substantial factor in producing the injury.
The specific reason that the Department of Transportation (DOT) was relieved from any liability to the plaintiffs in Anglin  notwithstanding that its negligence may have factually contributed to the harm suffered  was because of the highly extraordinary conduct of the intervening third person. As the supreme court observed:
While it may be arguable that petitioners [the original negligent actors], by creating a dangerous situation which caused the respondents to require assistance, *720 could have reasonably foreseen that someone may attempt to provide such assistance, it was not reasonably foreseeable that DuBose [the intervening third person] would act in such a bizarre and reckless manner. Petitioners' negligent conduct did not set in motion a chain of events resulting in injuries to respondents; it simply provided the occasion for DuBose's gross negligence.
502 So.2d at 899-900. The court concluded that the "policy of the law" would not extend tort liability to DOT's conduct under the circumstances presented. Id. at 899.
If I understand Anglin correctly, the court did not consider it unforeseeable that a third person would go to the aid of the motorist who was stranded as a result of the DOT's negligent design of the roadway, causing water to accumulate. It was not, however, reasonably foreseeable that the third person who rendered assistance would carry out his rescue mission in the bizarre fashion that actually occurred. The supreme court in essence decided that the intervening conduct of DuBose was so highly extraordinary as to relieve the DOT from liability. In so doing, it quoted with approval the following comments made by the Third District Court of Appeal in Stahl v. Metropolitan Dade County, 438 So.2d 14, 19 (Fla. 3d DCA 1983):
Florida courts, in accord with courts throughout the country, have for good reason been most reluctant to attach tort liability for results which, although caused-in-fact by the defendant's negligent act or omission, seem to the judicial mind highly unusual, extraordinary, bizarre, or, stated differently, seem beyond the scope of any fair assessment of the danger created by the defendant's negligence. Plainly, the courts here have found no proximate cause in such cases based solely on fairness and policy considerations, rather than actual causation grounds.
The above statements are consistent with section 435(2) of the Restatement, which asserts: "The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." (e.s.) As stated at section 443, comment c of the Restatement, relating to normal intervening forces:
[I]f the actor's negligent conduct puts another in peril, the fact that a third person who intervenes to avert it should realize his incompetence to give safe aid does not necessarily relieve the actor from responsibility for the harm caused by the third person's interference. On the other hand, if the third person officiously intervenes when his incompetence is so great that any ordinary person would realize the grave danger of meddling with the situation, his interference may be regarded as so extraordinary as to relieve the actor from liability.
(e.s.)
In determining whether an intervenor's conduct is so highly extraordinary as to prevent the actor's negligence from being a legal cause of the injury suffered, the court must evaluate the event  not from the perspective of the actor at the time the injury occurs, but rather "after the event with the full knowledge of all that has happened. This includes those surroundings of which at the time the actor knew nothing but which the course of events discloses to the court." § 435(2), comment d.

I.
We are essentially confronted with the question of whether Gulf Power's negligence in failing to respond promptly to a service call, or in negligently dispatching its service repairmen to the wrong location, could be considered a substantial factor in causing the harm sustained by plaintiffs, due to a delay of approximately an hour and forty-five minutes to two hours, at which time the plaintiffs were brutally assaulted by two unknown assailants. Its negligence in so acting should also be considered in conjunction with evidence that Gulf Power had, or with reason should have had, knowledge that the general area in which the assaults occurred could justifiably *721 be considered a "high crime area," because the record discloses that during the same year that plaintiffs suffered their injuries, twenty-six crimes were reported in the several-block area in and around that where the attacks occurred. Of that number, one included an aggravated assault, while the remaining offenses comprised larcenies, burglaries, vehicular thefts and one simple assault.
Notwithstanding that Gulf Power may be considered to have been reasonably placed on notice that the area in which the two telephone repairmen were located subjected them to the danger of criminal assault, and that its failure to send without unreasonable delay its own repair personnel to the aid of plaintiffs may have increased the plaintiffs' exposure to the risk of such assault, I am of the view that the duty of Gulf Power to protect the telephone repairmen from the hazard of criminal assault by third persons was not within the scope of the risk created by its conduct. If this theory is correct, we are required to say that the responsibility for the plaintiffs' injuries, as a matter of legal policy, shifted to the criminal actors, and that Gulf Power's responsibility was therefore superseded by the abnormal intervening force of the unknown assailants. In reaching this conclusion, I have relied primarily upon pertinent sections of the Restatement, its comments and examples.

II.
In its discussion of general principles relating to the causal relation necessary to the existence of liability for another's harm, section 430 of the Restatement states: "In order that a negligent actor shall be liable for another's harm, it is necessary not only that the actor's conduct be negligent toward the other, but also that the negligence of the actor be a legal cause of the other's harm." One's conduct may constitute the legal cause of the harm to another if
(a) his conduct is a substantial factor in bringing about the harm, and
(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.
Restatement, § 431. In applying the above principles to a proper determination of whether Gulf Power's conduct can be considered a substantial factor in bringing about the harm suffered, or whether the criminal acts should be considered a superseding cause of the injuries, Chapter 16, Title C. of the Restatement, relating to superseding cause, is instructive, particularly sections 442 B and 449 thereof.
Section 442 B, pertaining to an intervening force causing the same harm as that risked by the actor's conduct, states:
Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.

(e.s.) Section 442 B, comment b explains:
If the actor's conduct has created or increased the risk that a particular harm to the plaintiff will occur, and has been a substantial factor in causing that harm, it is immaterial to the actor's liability that the harm is brought about in a manner which no one in his position could possibly have been expected to foresee or anticipate. This is true not only where the result is produced by the direct operation of the actor's conduct upon conditions or circumstances existing at the time, but also where it is brought about through the intervention of other forces which the actor could not have expected, whether they be forces of nature, or the actions of animals, or those of third persons which are not intentionally tortious or criminal.
From a superficial reading of the above section and comments, one might conclude that Gulf Power should not, as a policy of the law, be relieved from liability to the plaintiffs, because its negligence in failing to dispatch promptly its service repairmen to the correct location increased the risk of *722 intentional harm suffered by plaintiffs, and therefore the question of whether its conduct could be considered a substantial factor in the bringing about of the harm to the plaintiffs should necessarily be one for the jury. Before arriving at that conclusion, however, the above comment must be tempered by the above underscored language of § 442 B, as well as comment c to that section. Comment c cautions that
[t]he rule stated in this Section does not apply where the harm of which the risk has been created or increased by the actor's conduct is brought about by the intervening act of a third person which is intentionally tortious or criminal, and is not within the scope of the risk created by the original negligence. Such tortious or criminal acts may in themselves be foreseeable, and so within the scope of the created risk, in which case the actor may still be liable for the harm, under the rules stated in §§ 448 and 449. But if they are not, the actor is relieved of responsibility by the intervention of the third person. The reason usually given by the courts is that in such a case the third person has deliberately assumed control of the situation, and all responsibility for the consequences of his act is shifted to him.
(e.s.)
In the case at bar we have facts clearly demonstrating that Gulf Power's negligence in failing to respond to a call for assistance increased the risk of harm to the plaintiffs. The question, however, is whether one can reasonably say that the harm that was brought about by the intervening criminal acts of third persons was within the scope of the risk caused by Gulf Power's negligence? The answer in my judgment must be no.

III.
The above quoted comments' reference to section 449 of the Restatement is helpful. Section 449 states: "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." (e.s.) In other words, as stated in comment a to the above section, "It is only where the actor is under a duty to the other, because of some relation between them, to protect them against such misconduct, or where the actor has undertaken the obligation of doing so, or his conduct has created or increased the risk of harm through the misconduct, that he becomes negligent." (e.s.) Comment b explains: "To deny recovery because the other's exposure to the very risk from which it was the purpose of the duty to protect him resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity." (e.s.)
For example, in K-Mart Enterprises of Florida, Inc. v. Keller, 439 So.2d 283 (Fla. 3d DCA 1983), pet. for rev. denied, 450 So.2d 487 (Fla. 1984), it was held that the criminal misuse of a firearm did not insulate the seller from liability arising out of a violation of the Gun Control Act (18 U.S.C. § 922 (d)), in that the provisions of the Act, forbidding a gun dealer to sell a firearm to any person without complying with a questionnaire form asking the intended buyer whether he or she was an unlawful user of narcotic drugs, was the very risk from which it was the purpose of the duty to protect others who might be injured as a result of the seller's failure to comply with the law. See also Enders v. Apcoa, Inc., 127 Cal. Rptr. 751, 55 Cal. App.3d 897 (1976) (police officer's collision with an automobile that had been stolen from a parking lot while the officer was giving chase was not a superseding cause of the harm suffered by the officer, which would relieve the parking lot owner from liability, because the owner knew or with reason should have known that keys were left in vehicles parked in its lot; only one attendant was on duty at the lot where the automobile was stolen, and in three previous years twelve vehicles had been stolen from the lots operated by the lot owner).
As the above cases reflect, the likelihood that the intervening person or persons might act in the particular manner in which they did was the hazard or one of the *723 hazards for which the actor was under a duty to provide the plaintiffs protection. It is at this point that one must analyze the issue, not exclusively in terms of whether the actor's conduct can be determined the legal cause of the harm suffered, but also in consideration of that element of negligence which, under the circumstances at bar, is inextricably connected with causation  that of duty.

IV.
The duty to refrain from certain conduct may be established solely to protect another from the risk of harm arising from one particular hazard. In other words, if "the harm which has resulted was itself within the risk created [or increased by the actor's conduct], the fact that it has been brought about in a manner which was not to be expected, or by the intervention of forces which were not within the risk, does not necessarily prevent the actor's liability." See section 281, comment f. "Where [, however,] the harm which in fact results is caused by the intervention of factors or forces which form no part of the recognizable risk involved in the actor's conduct, the actor is ordinarily not liable." Id. (e.s.) For example, in Chavez v. Tolleson Elementary School District, 122 Ariz. 472, 595 P.2d 1017, 1 A.L.R.4th 1089 (1979), the court held, because there were no facts in the record indicating that school personnel should have been aware of the potential for criminal conduct in the area of the school, that, as a matter of law, the defendant school district could not reasonably have foreseen that the pupil would leave the school grounds without permission and thereafter be abducted and murdered by a third person. Thus, although there was clearly a special relationship between the school district and the student, the court concluded that the intervening criminal act by a third person, not associated with the school, was foreign to any risk created by the school, and therefore fell within the category of an unforeseeable, superseding cause.
On the other hand, the harm suffered by the plaintiff in Collins v. School Board of Broward County, 471 So.2d 560 (Fla. 4th DCA 1985), writ dismissed, 491 So.2d 280 (Fla. 1986), was held to be within the scope of the duty of protection owed to the plaintiff by the defendant. There, a mentally handicapped student was sexually assaulted by another student during shop class at a time when the substitute teacher was absent from the classroom, and the facts moreover showed that the school's administrators and students were aware of the intervenor's propensity to engage in sexually aggressive conduct. See also Patterson v. Deeb, 472 So.2d 1210 (Fla. 1st DCA 1985), pet. for rev. denied, 484 So.2d 8 (Fla. 1986) (criminal attack on tenant by third person not a superseding cause of landlord's negligence in failing to provide tenant a secure residence against criminal attack, because the harm that occurred was within the scope of the danger attributable to the landlord's negligent conduct).
The above cases are illustrative of the rule that there may arise situations where "the actor, as a reasonable man, is required to anticipate and guard against the intentional, or even criminal, misconduct of others." See § 302 B, comment e. Under such situations the actor may not be relieved from liability for harm caused to another by the criminal acts of third persons "if the actor realizes or should realize that [his act or omission] involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal." § 302 B. In other words, although the actor ordinarily would not be obliged to protect another from the criminal acts of third persons,[1] he may be required to do so in certain situations because of the nature of the relationship between him and the injured party, such as special relationships (i.e., carrier and passenger, landlord and tenant, innkeeper and guest, etc.), or by contract, where "the actor has undertaken a duty to protect the other against such misconduct." See § 302 B, comment e.
*724 An example of a duty of protection required by a special relationship is given under section 449, where a female passenger is traveling on a train of a certain railroad company, and is forced to leave the train because her ticket entitled her to ride only to a certain station. The defendant so acted, despite the fact that the station had closed, it was late at night and in an area where the conductor knew contained many persons of vicious character. While attempting to pass the area on foot, the woman was attacked and sexually assaulted by such persons. The railway company is subject to liability on the theory that the passenger's exposure to sexual assault was the very risk for which it was the purpose of the duty of the carrier to provide protection.

V.
In the case at bar, there existed no special relationship between plaintiffs and the defendant utility company. Its duty to plaintiffs arose from the promise of the Gulf Power dispatcher,[2] and the question is whether, in considering the promise made by Gulf Power, to dispatch without unreasonable delay its service personnel to the correct location, its promise could reasonably be construed to provide the plaintiffs protection from the intentional misconduct of others. I do not consider that there was a promise, reasonably implied, that Gulf Power undertook a duty to protect plaintiffs from the potential criminal conduct of third persons. Its duty encompassed only its responsibility to render electrical repair, as well as the reasonable consequences resulting from its failure to supply such assistance without unnecessary delay. Although the rule is clear that a person may voluntarily assume a duty to protect another from a criminal attack, any such agreement, while not necessarily in writing, must be express. See Annot., 10 ALR 3d 619, 629 (1966). Cf. Swartz v. Ford, Bacon & Davis Construction Corporation, 469 So.2d 232 (Fla. 1st DCA 1985) (while contract expressly provided that architectural and engineering firm would comply with all applicable building codes, the contract did not expressly state that the firm had a duty to supervise and/or control the actual method of construction utilized by a building contractor, hence it owed no duty to protect an employee of the contractor from injury incurred on the job).
Whether the question at bar is analyzed in terms of duty or legal causation, its answer is admittedly not an easy one. Section 302 B, comment f states:
As in other cases of negligence (see §§ 291-293), it is a matter of balancing the magnitude of the risk against the utility of the actor's conduct. Factors to be considered are the known character, past conduct, and tendencies of the person whose intentional conduct causes the harm, the temptation of opportunity which the situation may afford him for such misconduct, the gravity of the harm which may result, and the possibility that some other person will assume the responsibility for preventing the conduct or the harm, together with the burden of the precautions which the actor would be required to take. Where the risk is relatively slight in comparison with the utility of the actor's conduct, he may be under no obligation to protect the other against it.

(e.s.)
My conclusion that Gulf Power's duty of care did not extend to protect the plaintiffs from exposure to intervening criminal conduct is supported also by the following two illustrations provided in the comments to section 442 B: "A negligently leaves an *725 excavation in a public sidewalk, creating a risk that a traveler on the sidewalk will fall into it. B, passing C on the sidewalk, negligently bumps into him, and knocks him into the excavation. A is subject to liability to C." Assume, however, the same facts, "except that B deliberately kicks C into the excavation. A is not liable to C." In the former example, A's negligent conduct in leaving the excavation in the sidewalk created the risk of injury to C, and the intervening negligence of B was nonetheless within the scope of the risk created by A's conduct. In the latter example, however, the intentional malicious act of B in kicking C into the excavation is not considered within the scope of the risk created by A's negligence, on the ground that B has assumed control of the situation, as well as responsibility for the consequences of his malicious act.

VI.
Applying the rules from the above examples to the facts at bar, I conclude that if the plaintiffs had been injured by a fallen electrical line following an unreasonable delay by Gulf Power in forwarding its repairmen to the correct location, Gulf Power would correctly be subjected to liability on the ground that its conduct exposed the plaintiffs to the very risk from which it was the purpose of Gulf Power's duty to provide the plaintiffs protection. Cf. Padgett v. West Florida Electric Cooperative, Inc., 417 So.2d 764 (Fla. 1st DCA 1982) (issue of whether a motorist's collision with a utility pole was an intervening, superseding cause of motorist's injuries could not be resolved by summary judgment, because the utility company's conduct in placing the pole at the location in question, and in operating its circuit breaker safety system, required a jury to decide if the intervening negligence was within the scope of the risk created by the company's conduct). In the present case, however, Gulf Power's implied promise of repair would not, as a policy of the law, include as well the responsibility to protect the plaintiffs from intentional acts of misconduct by third persons. This conclusion is further clarified by the following example from the Restatement:
The employees of the A Theatre Company negligently leave a chair on the railing of the balcony, creating the risk that it may accidentally or negligently be knocked off of the railing in the dark, and will injure some person below. Without any reason whatever on the part of the Theatre Company to anticipate such conduct, B, a boy attending the theatre, deliberately throws the chair off of the railing, and it falls upon C and injures him. A Theatre is not liable to C.
§ 442 B, comment c, illustration 9.
Clearly under the facts presented in the above illustration, a special relationship existed between A Theatre Company and C, its patron. See Mosqueda v. Paramount Enterprises, Inc., 111 So.2d 63 (Fla. 3d DCA), cert. denied, 115 So.2d 415 (Fla. 1959) (a higher degree of diligence is imposed on the proprietor of a place of amusement than is required of stores, banks, and other places of business). Presumably had the boy in the above example accidentally bumped into the chair that had been negligently left on the railing of the balcony, and the chair had then fallen upon the theatre patron, resulting in his injury, the theatre would not be relieved of its employees' negligence. In the example given in the Restatement, surely the operators of the theatre company must have been aware that persons of vicious temperament occasionally attend theatres  although it had no reason to anticipate the particular intentional malicious act by the boy in question. Nevertheless, the boy's intentional conduct cannot be deemed within the scope of the created risk for the policy reason that "in such a case the third person has deliberately assumed control of the situation, and all responsibility for the consequences of his act is shifted to him." See Restatement, § 442 B.
Similarly, in the present case, although Gulf Power can reasonably be imputed to possess knowledge that the area where the attacks occurred was a "high crime area," it had no knowledge of the vicious propensities of the particular persons who actually committed the crimes. In discussing the difference between the two groups of cases *726 in which tort liability is attached on the one hand, and disallowed on the other, Prosser states that the difference
apparently lies in the conclusion of the courts that in the latter type of case the responsibility is shifted to the second actor. Where there is a malicious or criminal act, the original actor might be free to say, even if he had anticipated the misconduct, that it was not his concern, whereas he might still be responsible for inadvertence or ignorant blunders. Where he would be relieved of responsibility even if the act were to be anticipated, he should be no less relieved when it is unforeseeable, even though the result is part of the risk he has created.
W. Prosser, Law of Torts 287-288 (4th ed. 1971) (e.s.).
The end result of this overlong discussion of intervening, superseding causation is, to return to the words of the supreme court in Department of Transportation v. Anglin, 502 So.2d at 899: "The policy of the law will ... not allow tort liability to attach to [the] conduct" of Gulf Power, notwithstanding that it may have factually contributed to the injuries suffered by plaintiffs. For these reasons, and not without considerable difficulty, I concur with the result reached by the majority.
NOTES
[1] See § 448 and comments thereto.
[2] Plaintiffs also contend that Gulf Power's duty to protect plaintiff from criminal misconduct arose as well from Florida Administrative Code Rule 25-6.094(2), requiring electrical utilities to respond immediately to reports of electrical conditions in situations where personal injury or property damage is immediately foreseeable. I can see no greater duty imposed upon Gulf Power by the rule than upon its agreement that it would without unreasonable delay dispatch assistance, as discussed infra. Moreover, "because the record contains no evidence interpreting the rule, it cannot be said with any degree of certainty ... that the injury was of a type intended [by the rule] to be prevented." Roberts v. James, 447 So.2d 947, 949 (Fla. 2d DCA), pet. for rev. denied, 453 So.2d 44 (Fla. 1984).