Willis M. HANSEN, Dennis B. Hansen, State Bank of Lawler, and Precision of New Hampton, Inc., Appellees,

v.

ANDERSON, WILMARTH & VAN DER MAATEN, a Partnership, Calvin R. Anderson, Lee E. Wilmarth, and Andrew F. Van Der Maaten, Appellants,

v.

Michael Kennedy, Third–Party Defendant.

No. 01–1447.

Supreme Court of Iowa.

Jan. 23, 2003.

Rehearing Denied March 14, 2003.

Patrick M. Roby and Robert M. Hogg of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellants.

Edward J. Gallagher, Jr. and Timothy C. Boller of Gallagher, Langlas & Gallagher, Waterloo, for appellees.

CARTER, Justice.

The law firm of Anderson, Wilmarth, and Van Der Maaten and Calvin R. Anderson, Lee E. Wilmarth, and Andrew F. Van Der Maaten, members thereof, appeal from a judgment for money damages against them in a legal malpractice action brought by plaintiffs, Willis M. Hansen, Dennis B. Hansen, State Bank of Lawler, and Precision of New Hampton, Inc. The Hansens have an ownership interest in Precision of New Hampton, Inc. and State Bank of Lawler, and for this reason, the plaintiffs will be referred to collectively herein as the Hansen interests. The Hansen interests alleged that the Anderson firm was negligent in handling a business-asset sale to the Hansen interests and was also negligent in the defense of a business tort action against the Hansen interests by the owners of the business whose assets were transferred in the asset sale.

Following a bench trial, the district court found that the Anderson firm was not negligent in its handling of the tort action against the Hansen interests but was negligent in its handling of the asset sale. The court found that the negligent handling of the asset sale was the precip-

itating cause of the subsequent tort action in which substantial judgments were rendered against the Hansen interests. Judgment was rendered against the Anderson firm and its members for the amount of the tort recovery exacted from the Hansen interests plus interest, costs, and attorney fees. On appeal the Anderson firm urges that its negligence, if any, in regard to the asset sale was not a cause in fact or a legal cause of the tort judgments against the Hansen interests. Because we agree with that contention, we reverse the judgment of the district court.

Many of the facts surrounding the current litigation are set forth in two prior opinions of this court, *Hansen v. Anderson, Wilmarth & Van Der Maaten*, 630 N.W.2d 818 (Iowa 2001), and *Ezzone v. Riccardi*, 525 N.W.2d 388 (Iowa 1994). As the evidence in the present case indicates, prior to April 21, 1987, the Hansen interests had arranged for Precision of New Hampton, Inc. to purchase the assets of a corporation known as Precision Torque Converters of Iowa. The Hansen interests were represented by the Anderson firm with respect to this transaction.

The preliminary sale documents (prepared by the Anderson firm) required the selling party to provide proof of corporate authority to make the sale. The person acting on the corporation's behalf was Ronald Riccardi. The attorney representing the seller provided documents which showed that Riccardi was the sole member of the board of directors of the selling corporation, was both president and secretary-treasurer of the corporation, and was the person authorized to issue bills of sale and deeds. Riccardi's election as an officer of the corporation was purportedly by his own action as the sole director of the corporation. The Anderson firm accepted this documentation as establishing Riccardi's authority to complete the sale on be-

half of the selling corporation. As later litigation in *Ezzone* established, the documents the selling corporation's attorney provided were false. In fact, Riccardi was never a director or shareholder of the selling corporation and had not been designated as a corporate officer by those persons who were.

The sale price for the assets of Precision Torque Converters of Iowa was $250,000. Because the buyer had advanced certain funds to satisfy creditors' claims against the selling corporation, the settlement check was in the amount of $231,481.81. That check was made payable to Precision Torque Converters of Iowa. It was never negotiated. In lieu of negotiating the settlement check, Riccardi prevailed on the Hansen interests to transfer the amount of that check directly to him plus an additional $18,526.19 that was withdrawn from the account of Precision Torque Converters of Iowa at the State Bank of Lawler. The Anderson firm had no knowledge of these payments to Riccardi.

In the present litigation, the Hansen interests have alleged that the Anderson firm was negligent in accepting the documentation provided with respect to Riccardi's authority to act for the corporation and also for not requiring a showing of shareholder approval with respect to the transaction, which was required by Iowa Code section 496A.76(3) (1985). The district court found that the Anderson firm was negligent in both of those respects. It further found that, "but for the negligence of the Defendants, the asset sale would not have been completed and, but for the transfer of the assets based on Riccardi's false assertion of authority to sell, the Plaintiffs would not have been sued and would not have suffered the damages claimed." Other facts and circumstances that bear on the issues before us will be

considered in connection with our discussion of the legal issues presented.

## I. *The Ezzone and LaRosa Litigation.*

In prior litigation, Harold Ezzone was awarded $346,500 in actual and punitive damages against the Hansen interests. In the same litigation, Patricia LaRosa was awarded $447,000 in actual and punitive damages against the Hansen interests. The jury in that litigation expressly found in a special verdict that Ezzone and LaRosa each owned fifty percent of Precision Torque Converters of Iowa and that Riccardi had no ownership interest in the corporation.

Ezzone and LaRosa's claims, as submitted to the jury, were based on three theories of recovery: tortious interference with a contract, conversion of assets, and breach of a confidential relationship. The tortious-interference claims against the Hansen interests were based on their own alleged actions. The conversion and breach-of-confidential-relationship claims were based on Riccardi's acts as part of a conspiracy with the Hansen interests.

None of the claims submitted to the jury were based in whole or in part on the April 21, 1987 asset transfer. Harold Ezzone testified at the trial of the action against the Hansen interests that it was in the best interest of Precision Torque Converters of Iowa to sell its assets and that the asking price was properly fixed at $250,000. The problem from the standpoint of the selling corporation was not the asset sale but what was done with the purchase money that was supposed to have been paid to the corporation. Counsel for Ezzone and LaRosa expressly disclaimed on the record, prior to submission of the case to the jury, any damage claims based on the asset sale. The conversion claim that remained in the case was for conversion of the business entity, and the jury found that this conversion had occurred on January 30, 1987, more than two months prior to the asset sale.

The jury returned separate verdicts for actual and punitive damages on each of the three theories of recovery. On appeal this court in *Ezzone,* 525 N.W.2d at 392, found the damages awarded on the tortious-interference claim and the conversion claim duplicated the damages awarded on the conspiracy-to-breach-a-confidential-relationship claim. Consequently, the only judgment entered against the Hansen interests was on the latter claim.

## II. *The Causation Issue.*

The Anderson firm argues that their actions in permitting the asset sale to go forth were neither a cause in fact nor a legal cause of the judgments subsequently entered against the Hansen interests in the Ezzone and LaRosa litigation. We have recognized that,

> under any definition of causation, this element has two components: (1) the defendant's conduct must have *in fact caused* the plaintiff's damages (generally a factual inquiry) and (2) the policy of the law must require the defendant to be *legally responsible* for the injury (generally a legal question).

*Gerst v. Marshall,* 549 N.W.2d 810, 815 (Iowa 1996).

The Anderson firm argues that, based on the theory on which recovery was allowed, the asset sale provided no basis for the judgments nor any of the damages included therein. The Hansen interests urge that the district court properly found the asset sale to be a legal cause of the judgments rendered in the Ezzone and LaRosa litigation because, they urge, this was a substantial factor in the injury to the

corporation, and absent the asset sale, no litigation would have occurred.

In determining whether the asset sale was a legal cause of the judgments rendered against the Hansen interests in the prior litigation, we must be faithful to the legal theory on which the judgments were based. *See North Iowa State Bank v. Allied Mut. Ins. Co.,* 471 N.W.2d 824, 828 (Iowa 1991) (legal consequences of judgment for purposes of subsequent litigation are tied to the legal theory on which the judgment was based). The recovery rendered against the Hansen interests was based on the theory that they aided and abetted Riccardi in a breach of confidential relationship involving Ezzone and LaRosa, including claims for injury allegedly sustained both prior to the asset sale and following the asset sale that were not related thereto. As a result, it is manifest that the asset sale was not a cause in fact of all of the damage claims that were submitted to the jury under this theory. This circumstance would require a reversal of the judgment even if some of the injury sustained by the Hansen interests was the result of the asset sale. Our inquiry convinces us, however, that there is no basis in fact to conclude that any portion of the judgments visited against the Hansen interests was brought about as the result of the Anderson firm's handling of the asset sale.

The following pertinent rule of adequate causal relation is contained in the Restatement (Second) of Torts:

*Relation of negligence problem to cause problem.* The conditions which are necessary to make the act negligent in respect to the harm of which the other complains ... may be summarized as follows:

The actor's conduct, to be negligent toward another, must involve an unreasonable risk of:

(1) causing harm to a class of persons of which the other is a member and

(2) subjecting the other to the hazard from which the harm results.

Restatement (Second) of Torts § 430 cmt. a, at 426–27 (1965). Comment c of this Restatement section provides:

Harm may be sustained as a consequence of conduct which is negligent only because, and in so far as, it subjects another to some particular hazard. But the harm may result in some other manner than through the other's exposure to this hazard. If so, there can be no liability even though in all other respects the manner in which the harm is brought about is such as would make the actor liable. This follows from the rule stated in § 281, Comment *e,* which states that where the negligence of the act consists in its recognizable tendency to subject another to a particular hazard, the actor cannot be subject to liability for any harm occurring otherwise than by the other's exposure to that hazard.

Restatement (Second) of Torts § 430 cmt. c, at 428 (1965).

We recognize the role of particular hazards in defining legal cause in *Virden v. Betts & Beer Construction Co.,* 656 N.W.2d 805, 808 (Iowa 2003) (also decided this day). In that case, we hold that the improper installation of a structural member in a building by a contractor was not a legal cause of injury sustained by a maintenance worker for the building's owner when he attempted to replace the member after it became dislocated. A similar application of the particular hazard limitation on legal cause was applied in *Barnes v. Gulf Power Co.,* 517 So.2d 717, 723 (Fla. Dist.Ct.App.1987). The court in that case held that a power company's negligent maintenance of its electrical lines was not

a legal cause of a criminal assault sustained by a telephone company employee who was repairing damage to telephone lines caused by the downed power lines.

In applying the foregoing principles to the facts of the present litigation, we are convinced that an act which merely places persons in the position where they sustain injury from an unrelated event is not for that reason a legal cause of the injury. In the present case, the hazard to which the Hansen interests were exposed as a consequence of the Anderson firm's failure to challenge Riccardi's authority to complete the asset sale was not the hazard that produced the judgment against them in the Ezzone and LaRosa litigation. Based on the finding of the jury in that litigation, that hazard arose entirely from conduct of the Hansen interests' own making.

Another Restatement rule clearly precludes recovery against the Anderson firm under the undisputed facts pertaining to the judgments in the Ezzone and LaRosa litigation. That rule provides:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

Restatement (Second) of Torts § 448, at 480 (1965). The judgments entered against the Hansen interests were based on their own intentional tortious conduct, beyond the expectations of the Anderson firm. Consequently, their efforts to recoup the damages that were paid for such conduct is precluded by the doctrine embodied in this provision of the Restatement. We have considered all issues presented and conclude that the judgment of the district court must be reversed. The case is remanded to that court for the entry of a judgment dismissing all of the plaintiffs' claims and awarding costs to the Anderson firm.

**REVERSED.**